## MENASHA v. HAZARD.

1. A town in Wisconsin, being thereunto authorized by law, subscribed for stock in a railroad company, and issued its bonds in payment therefor, each reciting that it "shall be valid only when it is thereon duly certified that the conditions upon which it was voted, issued, and deposited by said town have been performed." Suit was brought on the bonds by a party who in good faith purchased them before they matured. *Held,* that the certificate on the bonds (*infra,* p. 87) is in proper form, estopping the town from denying their validity, and placing them in a condition to be put on the market as commercial paper.

2. Where, before the subscription and bonds were voted, the company was authorized to consolidate with other companies constructing connecting lines, and such consolidation was effected, — *Held,* that the issue of the bonds to the consolidated company was lawful.

3. *County of Scotland* v. *Thomas* (94 U. S. 682) and *Wilson* v. *Salamanca* (99 id. 499) approved.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

This was an action by Rowland G. Hazard against the town of Menasha and the city of Menasha, upon interest coupons detached from bonds of the town of Menasha, payable to the Wisconsin Central Railroad Company or bearer. On the trial of the issues it appeared:

I. That the Portage, Winnebago, and Superior Railroad Company made to said town the following proposition : —

"The Portage, Winnebago, and Superior Railroad Company of the State of Wisconsin, a corporation of said State authorized to construct and operate a railroad with one or more tracks, from Doty's Island, situated in the towns of Neenah and Menasha, in the county of Winnebago, northwesterly, *via* the towns of Weyauwega, Waupaca, Amherst, and Stevens Point, to Bayfield, and thence to Superior on Lake Superior, and requiring the aid of the said towns of Menasha and Neenah, each in the sum of $50,000, in the construction of that portion of road which lies between said Doty's Island and the Wolf River, and being thereto authorized by chapter 126 of the General Laws of 1869, entitled 'An Act to authorize certain counties, towns, cities, and villages to aid in the construction of the land-grant railroad from Portage City and from Doty's Island to Lake Superior,' submits to the said town of Menasha the following proposition, to wit : —

" *First*, That in consideration of the construction by said company of a single-track railroad from block 3 in Jones's Plat in the said town of Neenah, Doty's Island, to Wolf River, and of five hundred full paid shares of the capital stock of said company of $100 each, the said town of Menasha shall pay to said company or its assigns the sum of $50,000, at the time and in the manner hereinafter provided.

" *Second*, That said town of Menasha shall secure to this company the payment of the said sum of $50,000 in its corporate bonds to be issued in that amount, to run twenty years from the date of issue, with interest thereon at the rate of seven per cent, payable semi-annually, principal and interest payable in gold at the National Bank of Commerce of the city of New York; that the said bonds, besides the usual conditions, shall provide that the same and the coupons or interest warrants thereon shall, when due, be receivable for taxes to be collected in said town; and that there shall be annually levied upon the property in said town a tax sufficient to pay the interest upon said bonds, and to raise a sinking fund to pay the principal thereof when the same shall become due, and payable in the manner provided by said chapter 126 of the General Laws of 1869; and shall also further provide that said bonds shall be valid only when it is thereon duly certified that the conditions upon which they were voted, issued, and deposited by said town have been performed. The said bonds and coupon or interest warrants attached shall be engraved or printed in the usual form and style, and in such denominations (not less than one nor more than ten hundred dollars) as shall be approved by this company, and the cost thereof shall be paid by the treasurer, on the order of the chairman of said town.

" *Third*, That the proper officers of said town shall issue said bonds as required by law, and on notice being received by the chairman of the board of supervisors of said town from the said National Bank of Commerce of New York that this company has deposited therein to the credit of said town the said five hundred full paid shares of its capital stock, he shall deposit, or cause to be deposited, in said bank all of the said bonds, with instructions to said bank or its officers to hold the same on deposit in trust for said town, until such time as there shall be filed in said bank a properly authenticated certificate signed by the chief officer of this company and the chairman of the board of supervisors of said town, or the secretary of state of this State, that the iron has been laid upon the track of road, and cars have been run over the same

through from the depot on Doty's Island, or in said town, to Wolf River, when the said bonds shall become the absolute property of and be held by said bank, subject to the order of this company or its assigns, and which certificate shall authorize and require the president of said bank to certify upon the back of each of said bonds, that the conditions upon which the said bonds were voted, issued, and deposited by said town have been performed; and in case this company fail to comply with the said conditions, the said bonds shall be returned to said town on demand of the authorities thereof.

"*Fourth,* That, in consideration of the acceptance of this proposition and the fulfilment of the terms thereof by the said town, this company will, without unnecessary delay, issue for deposit to the credit of said town in the said National Bank of Commerce of New York five hundred full paid shares (of $100 each) of its capital stock, which is to be delivered to said town at the time of the delivery of said bonds to this company, and that on the acceptance of this proposition, and as soon as the right of way and depot grounds have been secured by this company, this company will commence the construction of the track of said portion of its road, and will have the same completed and the iron laid thereon and cars run over the same within one year from the time the bonds of said town have been issued and deposited in said bank as aforesaid: *Provided, however,* that the like propositions submitted by this company to the town of Neenah shall be accepted and its conditions fulfilled by said town.

"*Fifth,* In the event the said town of Neenah fail to accept and fulfil the terms of said proposition so as aforesaid submitted to it, this company further proposes to said town of Menasha that if the required additional sum of $50,000 shall be furnished to this company by individual subscription to stock in like amount, and satisfactorily secured to be paid, the depot of this company shall be located and its road constructed therefrom at such place in said town and on such route as may be agreed upon between this company and the authorities of said town, and under the foregoing proposition as hereby qualified.

"In witness whereof, the Portage, Winnebago, and Superior Railroad Company has caused these presents to be signed by its president and sealed with its seal this tenth day of May, A.D. 1870.

"GEO. REED,

"*President P., W., & S. R. R. Co.*"

II. That on the 4th of June, 1870, an election was held in said town as provided in said act, and a majority of the votes cast in favor of the railroad proposition.

III. That said proposition was published and voted upon as required by said act, except the third paragraph, which was published in the words following : —

" *Third,* That the proper officers of said town shall issue said bonds as required by law, and, on notice being received by the chairman of the board of supervisors of said town from the said National Bank of Commerce of New York that this company has deposited therein to the credit of said town the said five hundred full paid shares of its capital stock, he shall deposit, or cause to be deposited, in said bank all of the said bonds, with instructions to said bank or its officers to hold the same on deposit in trust for said town until such time as there shall be filed in said bank a properly authenticated certificate signed by the chief officers of this company and the board of supervisors of said town, or the secretary of state of this State, that the iron has been laid upon the track of road and cars have been run over the same through from the depot, on Doty's Island, or in said town, to the Wolf River, when the said bonds shall become the absolute property of and be held by said bank, subject to the order of this company or its assigns, and which certificate shall authorize and require the president of said bank to certify upon the back of each of said bonds that the conditions upon which the said bonds were voted, issued, and deposited by said town have been performed ; and in case this company fail to comply with the said conditions, the said bonds shall be returned to said town on demand of the authorities thereof."

IV. That the Wisconsin Central Railroad Company deposited with said bank for said town five hundred shares of its common capital stock.

V. That on or about the 1st of June, 1871, the chairman of the board of supervisors of said town, with the town clerk, made fifty coupon bonds of said town ; that thereupon a suit was instituted in the Circuit Court of the county of Winnebago by one Lawson, a tax-payer in said town, on behalf of himself and all other tax-payers, to enjoin the issue of said bonds. An injunction was allowed, and served upon the officers of said town, restraining the issue of said particular fifty bonds, but no others under said act ; which injunction is still

in force. Upon service of such injunction, such issue of bonds was burned.

VI. That on the twenty-fifth day of October, 1871, said chairman and said clerk executed and delivered to the National Bank of Commerce a series of fifty coupon bonds of said town, of which the following is a copy : —

"$1,000.]                    TOWN OF MENASHA.                    [$1,000.

" No. 16.]                    STATE OF WISCONSIN.                    [No. 16.

" The town of Menasha, in the county of Winnebago and State of Wisconsin, acknowledges itself indebted in the sum of $1,000 lawful coin of the United States of America, which sum the said town of Menasha promises to pay to the Wisconsin Central Railroad Company, or to the bearer hereof, at the National Bank of Commerce in the city of New York, in twenty years from the first day of June, 1871, with interest at the rate of seven per centum, payable semi-annually at said bank, upon the presentation and delivery of the several coupons hereto annexed as they respectively become due, the principal and interest payable in gold, and to the payment of which, in the manner aforesaid, the faith and revenues of said town are hereby irrevocably pledged.

" This bond and the coupons or interest warrants thereon shall, when due, be receivable for taxes to be collected in said town, and there shall be annually levied upon the property in said town a tax sufficient to pay the interest upon this bond and to raise a sinking fund to pay the principal when the same shall become due and payable in the manner provided by chapter 126 of the General Laws of 1869 of said State, and this bond shall be valid only when it is thereon duly certified that it has been duly certified that the conditions upon which it was voted, issued, and deposited by said town have been performed.

" This bond is one of a series amounting in the aggregate to $50,000, and is issued in pursuance of a vote of the legal voters of said town on the fourth day of June, 1870, under and by virtue of an act of the legislature of the State of Wisconsin, entitled ' An Act to authorize certain counties, towns, cities, and villages to aid in the construction of the land-grant railroad from Portage City and from Doty's Island to Lake Superior,' approved March 9, 1869, and in pursuance of an act of the legislature of said State, approved Feb. 4, A.D. 1871, entitled ' An Act to change the name of the Portage, Winnebago, and Superior Rail-

road Company,' and of an act of the same legislature, approved March 1, A.D. 1871, amendatory of said chapter 126 of the General Laws of 1869 of Wisconsin.

"In witness whereof, the chairman of the board of supervisors and town clerk of said town have hereunto set their hands, this first day of June, 1871

"F. SCHNELLEN,
" <i>Chairman of the Board of Supervisors.</i>

"Attest:

{ TOWN OF MENASHA, WISCONSIN, }
{   WINNEBAGO COUNTY, SEAL. }     "D. J. RYAN, *Clerk.*"

To which bonds interest coupons in form like those sued on were annexed.

VII. That afterwards the chairman of the board of supervisors of said town and the president of the Wisconsin Central Railroad Company signed and delivered to said bank a joint certificate, which was afterwards authenticated by notarial certificates, of which the following is a copy:—

" *To the President of the National Bank of Commerce of New York :*

"The undersigned, Gardner Colby, president of the Wisconsin Central Railroad Company, formerly the Portage, Winnebago, and Superior Railroad, and Fr. Schnellen, chairman of the board of supervisors of the town of Menasha, Winnebago County, Wisconsin, do hereby certify that the iron has been laid on the track of road of said company from block No. 3 in Jones's plat, in the town of Neenah, Doty Island, to Wolf River, and that the cars have been run over the same daily for more than two weeks past from the depot on Doty's Island to said Wolf River, and that therefore, according to the terms of the proposition (a copy of which is hereto annexed), the said company are entitled to the transfer of the bonds of said town deposited with you.

"Dated at Menasha, Oct. 25, 1871.

"WISCONSIN CENTRAL R. R. Co.,
"By GARDNER COLBY, *President.*

[SEAL.]          "FREDERICK SCHNELLEN,

" *Chairman of the Town of Menasha.*

"STATE OF WISCONSIN,
    " *County of Waupaca, Town of Weyauwega, ss :*

"I, Albert V. Balch, a commissioner of deeds for the State of New York, residing in the town of Weyauwega aforesaid, do hereby

certify that Frederick Schnellen is the chairman of the board of
supervisors of the town of Menasha, in the State of Wisconsin, and
that his signature to the foregoing certificate is in his own hand
and is genuine, as he has this day before me acknowledged.

"In testimony whereof, I have signed my name and affixed my
official seal this twenty-fourth day of February, A.D. 1872.

[SEAL.]                               "ALBERT V. BALCH,
                    "_Commissioner of Deeds for the State of New York._


"COMMONWEALTH OF MASSACHUSETTS,
     "_County of Suffolk, City of Boston, ss:_

"On this twenty-ninth day of February, A.D. 1872, the above-
named Gardner Colby, who is personally known to me to be the
president of the said railroad company, made oath that the above-
written certificate by him signed is true, and that the seal affixed
thereto is the seal of said company and was so affixed by its
authority.

"Witness my hand and official seal, at the city of Boston, the
day and year aforesaid.

[SEAL.]                          "SAM'L S. CURTIS, _Notary Public._"


VIII. That on the fifteenth day of March, 1872, the said
bank sent said certificate of stock to the chairman of the
board of supervisors of said town, and on the same day deliv-
ered said bonds to said Wisconsin Central Railroad Company.

IX. That on the seventeenth day of April, 1872, the presi-
dent of the said bank affixed to said bonds his certificate, in
the words following : —.


"_To the President of the National Bank of Commerce of New
         York :_

"The undersigned, Gardner Colby, president of the Wisconsin
Central Railroad Company, formerly the Portage, Winnebago, and
Superior Railroad, and Fr. Schnellen, chairman of the board of super-
visors of the town of Menasha, Winnebago County, Wisconsin, do
hereby certify that the iron has been laid on the track of road
of said company from block No. 3, in Jones's plat, in the town of
Neenah, Doty's Island, to Wolf River, and that the cars have been
run over the same daily for more than two weeks past from the
depot on Doty's Island to said Wolf River. And that therefore,
according to the terms of the proposition (a copy of which is hereto

annexed), the said company are entitled to the transfer of the bonds of said town deposited with you.

"Dated at Menasha, Oct. 25, 1871.

[SEAL.]                         "WISCONSIN CENTRAL R. R. Co.,

"By GARDNER COLBY, *President.*

(Signed)          "FREDERICK SCHNELLEN,

"*Chairman of the Town of Menasha.*

"STATE OF WISCONSIN,

"*County of Waupaca, Town of Weyauwega, ss:*

"I, Albert V. Balch, a commissioner of deeds for the State of New York, residing in the town of Weyauwega aforesaid, do hereby certify that Frederick Schnellen is the chairman of the board of supervisors of the town of Menasha, in the State of Wisconsin, and that his signature to the foregoing certificate is in his own hand and is genuine, as he has this day before me acknowledged.

"In testimony whereof, I have signed my name and affixed my official seal this twenty-fourth day of February, A.D. 1872.

[SEAL.]                         "ALBERT V. BALCH,

"*Commissioner of Deeds for the State of New York.*

"COMMONWEALTH OF MASSACHUSETTS,

"*County of Suffolk, City of Boston, ss:*

"On this twenty-ninth day of February, A.D. 1872, the above-named Gardner Colby, who is personally known to me, and known to me to be the president of the said railroad company, made oath that the above-written certificate by him signed is true, and that the seal affixed thereto is the seal of said company, and was so affixed by its authority.

"Witness my hand and official seal, at the city of Boston, the day and year aforesaid.

[SEAL.]                         "SAM'L S. CURTIS, *Notary Public.*

"I hereby certify that I have received certificates of which the above are copies, which certificates are on file in this bank.

"April 17, 1872.

"ROBERT LENNOX KENNEDY,

"*President of the National Bank of Commerce in New York.*"

X. That in November, 1872, the said town levied a tax to pay the interest upon said bonds, and collected about two-thirds of it, and paid it over to the company, when the further collection of said tax was enjoined in the suit of said Lawson.

XI. That Lake Butte des Morts, a narrow lake about two thousand feet wide, lies between said block 3 in Jones's plat and the Wolf River, across which the route of said Wisconsin Central Railroad runs; that said company, instead of constructing a bridge of its own for its road across said lake, made an agreement with the Chicago and Northwestern Railway Company to cross said lake upon that company's bridge, of which agreement the following is a copy: —

" This agreement, made and entered into this first day of May, A.D. 1871, by and between the Chicago and Northwestern Railway Company, party of the first part, and the Wisconsin Central Railroad Company, party of the second part, witnesseth:

" The party of the first part, for and in consideration of the covenants and agreements herein contained on the part of the party of the second part, doth hereby covenant and agree to and with the said party of the second part, that the said party of the second part, its successors and assigns, shall and may have the use of and right to operate for railroad purposes, in common with the said party of the first part, the bridge across Lake Butte des Morts, near Doty's Island, in Wisconsin, and the right of way and use of ties across its land on the north side of said lake for a sufficient distance to enable said second party to make its connections therewith; also, the right of way and use of its ties from the south end of the bridge, including the bridge across the river to its depot grounds at Neenah Station, in Wisconsin, subject, however, to the regulations and stipulations hereinafter contained.

" The said party of the second part, in consideration of the premises, hereby covenants and agrees to lay down and maintain a track, with the necessary switches and frogs, at its own expense and for its own use, from the point of intersection of its own right of way with that of the party of the first part through the whole line which it may use in common with the said party of the first part, and to pay to the said party of the first part monthly, at the end of each and every month during the continuance of this agreement, one-half of the expense of maintaining and keeping in repair the line so used in common as aforesaid (including the bridges, road-bed, and ties, as well as the expense of the necessary signal-men, except, however, the iron, which each of said parties shall furnish and maintain for its own use), a statement of which expenses of maintaining said line, other than maintenance of the rails, shall be

furnished to said second party by said party of the first part monthly, at the end of each and every month during the continuance hereof.

"It is further mutually covenanted and agreed by and between the parties hereto that the payment of said one-half of the aforesaid expenses by said party of the second part shall be taken and accepted by the said first party in lieu of and as rental for the use of the line aforesaid and in full satisfaction thereof, and that said line, for the distance aforesaid, shall be used in common by the said parties, and that a signal shall be erected and maintained at joint expense, and no train of either company shall come upon the said common track until a signal for that purpose has been given; and that working trains of either company shall give way to all other trains, and freight trains to passenger trains; but if trains of both companies of the same class shall come at the same time, the train of the party of the first part shall have preference, and the management, repairs, and maintenance of said common track and line shall be and remain in charge of said first party.

"It is further mutually agreed that this agreement shall continue and remain in force for the period of twenty years hereafter next ensuing, but either party shall have the right to terminate the same upon giving to the party one year's notice in writing of its intention to terminate the same, but such notice shall not be given earlier than the first day of July, 1876.

"In witness whereof, the said party of the first part has caused these presents to be subscribed by its president or vice-president, attested by its secretary or assistant secretary, and the said party of the second part has caused these presents to be subscribed by its president and secretary, the day and year first above written.

{ C. & N. W. R'Y　　　"CHICAGO AND NORTHWESTERN RAILWAY CO.,
  CO. SEAL. }　　　　　"By M. L. SYKES, Jr., *Vice-President.*

"Attest:
　　"A. L. PRITCHARD, *Secretary.*

{ WIS. CENT. R. R.　　　"WISCONSIN CENTRAL RAILROAD CO.,
  CO. SEAL. }　　　　　"By GEO. REED, *President.*
"Attest:
　　"CURTIS REED, *Secretary.*"

XII. That said Wisconsin Central Railroad Company, in running across said bridge and coming to said block 3, runs on the line of the Chicago and Northwestern Railway Company about one mile; that except that distance the said Wisconsin

. Central Railroad Company has constructed its road from said block 3 to the Wolf River.

XIII. That on Nov. 23, 1870, the said Portage, Winnebago, and Superior Railroad Company voluntarily consolidated its franchise and capital stock with the Portage, Stevens Point, and Superior Railroad Company, a corporation incorporated by and under chapter 369 of the Laws of Wisconsin, 1870, under an agreement of consolidation filed in the office of the secretary of state of the State of Wisconsin, Dec. 5, 1870.

XIV. That on Feb. 4, 1871, the name of the Portage, Winnebago, and Superior Railroad Company was changed to the Wisconsin Central Railroad Company, under the provisions of chapter 27 of Private and Local Laws of Wisconsin, 1871. That by chapter 31, General Laws of Wisconsin, 1871, approved March 1, 1871, the said chapter 126 of the General Laws of 1869 was amended as follows: —

" SECT. 2. All bonds and other securities which have heretofore been voted by any county, town, incorporated city, or village under the provisions of said chapter 126 of the General Laws of 1869 to said railroad, under its name of Portage, Winnebago, and Superior Railroad Company, shall be issued and delivered to said company by and under its said name of Wisconsin Central Railroad Company; and such bonds or other securities so issued and delivered shall have in all courts and places and with all parties the same force and effect as though the name of said company had not been changed and the same had been issued and delivered to it under its name of Portage, Winnebago, and Superior Railroad Company."

XV. That on July 1, 1871, the said company voluntarily consolidated its franchises and capital stock with the Manitowoc and Minnesota Railroad Company, a corporation incorporated and extended under and by virtue of chapter 342 of the Private and Local Laws of Wisconsin for 1868, chapters 255 and 302 of the Private and Local Laws for 1869, and chapter 476 of the Private and Local Laws for the year 1871, by an agreement thereto filed in the office of the secretary of state of the State of Wisconsin, July 10, 1871.

XVI. That by chapter 127 of the General Laws of Wisconsin for 1874 the city of Menasha was incorporated and made

capable of being sued for the indebtedness of said town of Menasha, and liable to pay three-fourths of any recovery.

XVII. That the plaintiff bought the bonds of which the coupons are in suit from Gardner Colby, president of the Wisconsin Central Railroad Company, for a valuable consideration, without notice, other than appears on the face of the bonds and certificates printed on them, as follows : Bond No. 16, on Dec. 11, 1873 ; bonds Nos. 12, 13, 14, 15, 18, 19, 37, 38, and 39, on Sept. 12, 1874.

The judges were divided in opinion upon the following questions : —

*First*, Whether the coupons executed and delivered, and there being upon the bonds to which they were annexed such certificates as hereinbefore set forth and produced upon the trial by the plaintiff, created a liability against said town in favor of the plaintiff under the pleadings and proofs.

*Second*, Whether the court should have instructed the jury that the construction of such railroad by the Wisconsin Central Railroad Company without constructing the same across Lake Butte des Morts, but securing the right to cross said lake on the bridge of the Chicago and Northwestern Railway Company under the contract above set forth, was not a performance of the conditions of the proposition to construct a railroad from block 3, in Jones's plat, on Doty's Island, to Wolf River.

The court submitted to the jury these two questions : —

*First*, As to the fact, bearing upon the certificate which the text of the bond required, whether, under all the facts presented, there has been a substantial compliance with the terms of the proposition in the terms of the bond.

*Second*, Whether there has been a substantial compliance on the part of the railroad company as to the conditions of the construction of the road between Doty's Island and Wolf Creek.

And as to the latter question instructed the jury as follows :

Now, if there is nothing on the bond to render it invalid, the only other question that can arise in the case is, whether the consideration for which this bond was given has failed so as to render it inoperative in the hands of the plaintiff. That leads to the other part of the consideration; viz., was the road con-

structed from block 3 of Jones's plat, in the town of Neenah, on Doty's Island, to the Wolf River. That had to be done, undoubtedly, before these bonds were to be valid, — before there was a sufficient consideration to render them available to the plaintiff in the view that we have taken of the other part of the case.

*Third*, Whether a delivery of the stock of the Wisconsin Central Railroad Company, after consolidation with the Portage, Winnebago, and Superior Railroad Company and with the Manitowoc and Minnesota Railroad Company, as hereinbefore set forth, was a compliance with the terms of such proposition.

*Fourth*, Whether said town was authorized to issue its bonds to the Wisconsin Central Railroad Company after the several consolidations hereinbefore set forth.

Judgment was rendered in favor of the plaintiff against the town for the amount of the coupons sued on, and interest and costs. The town then removed the case to this court

*Mr. E. Mariner* for the plaintiff in error.

*Mr. Edwin H. Abbot, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The first question certified in this case is answered in the affirmative.

We think that the certificate on the back of the bonds is a substantial compliance with the condition on their face, and the proposition of the railroad company accepted by the town. The condition as expressed in the bonds is in the exact language of the second article of the proposition, and implies that they shall be considered as fully executed, and that they may be put on the market as valid commercial paper, " when it is thereon duly certified that the conditions upon which they were voted, issued, and deposited by said town have been performed." To ascertain what " duly " means in this connection it is necessary to look to the other parts of the proposition, and there we find in article 3 that the bonds, when issued by the proper officers of the town, were to be deposited with the National Bank of Commerce in New York, " in trust for said town, until such time as there shall be filed in said bank a properly authenticated certificate, signed by the chief officer of this

company and the chairman of the board of supervisors of said town, or the secretary of state of this State, that the iron has been laid upon the track of road and cars run over the same, through from the depot on Doty's Island, or in said town to Wolf River, when the said bonds shall become the absolute property of and be held by said bank, subject to the order of this company, or its assigns, and which certificate shall authorize and require the president of said bank to certify upon the back of each of said bonds that the conditions upon which the said bonds were voted, issued, and deposited by said town have been performed." Taken as a whole, the proposition and the condition on the face of the bond mean that the bonds should become the valid and subsisting obligations of the town when the president of the National Bank of Commerce had certified thereon that the president of the railroad company and the chairman of the board of supervisors of the town had certified to him that the iron had been laid on the track of the road and the cars run over the same from the depot on Doty's Island, or in said town, to Wolf River. This certificate was on the bonds when they were bought by the defendant in error on the market. In legal effect it was the same as if it contained the words, "that the conditions upon which they [the bonds] were voted, issued, and deposited by said town had been performed;" because by the very terms of the proposition the certificate of the proper officers was to be conclusive evidence to the president of the bank of that fact, and not only authorize, but require, him to make the indorsement contemplated. When, therefore, he certified that he had received, and put on file in his bank, certificates from the proper parties, such as were required as the basis of his action, he did certify to the facts which the proposition said they should conclusively prove. His statement of what they proved was unimportant. The proposition settled that.

The fact that the certificate furnished the bank is signed in the name of the railroad company by the president is not a valid objection. It was signed by the president, and that is all the proposition required.

The third and fourth questions are also answered in the affirmative.

Before the subscription and bonds were voted, the Portage, Winnebago, and Superior Company was authorized to consolidate with other companies ." which by law may be authorized to construct connecting lines of road or make such consolidation." Act approved March 10, and published April 6, 1870. The Portage, Stevens Point, and Superior Railroad was incorporated March 16, 1870, with express authority to consolidate with the Portage, Winnebago, and Superior Company. The Wisconsin Central Railroad Company is, in fact, the name of Portage, Winnebago, and Superior Company as changed by statute, Feb. 4, 1871. The organization of the company was the same after as before this change. The Manitowoc and Minnesota Railroad Company was authorized to enter into consolidation agreements by the act of March 24, 1871, being chapter 476 of Private and Local Laws, Wis., 1871, and the consolidation with the company was actually effected July 1, 1871. The vote for the bonds was taken June 4, 1870, and the bonds were issued and delivered to the bank Oct. 25, 1871. Upon this state of facts we think this case is brought directly within the principles settled in *County of Scotland* v. *Thomas* (94 U. S. 682) and *Wilson* v. *Salamanca*, 99 id. 499. The authority of the Wisconsin Central Company was to consolidate with any other company that might at any time have the power to enter into such an arrangement. It was not confined to such companies as then had the power.

These answers dispose of the case, and make it unnecessary to consider the second question certified. When the bonds were " duly certified " and delivered to the railroad company by the bank, they became, under the agreement of the parties, valid instruments, completely executed in form, and in a condition to be put on the market as commercial paper. Having on them the necessary certificate, the purchaser need not inquire whether the facts were as certified. *Anthony* v. *County of Jasper*, 101 U. S. 693. With the certificate indorsed, the bonds were in legal effect the same as if they had been issued by the proper officers under full authority without the condition which appeared on their face. Under these circumstances, the condition did not destroy their negotiability.

*Judgment affirmed.*