## SCOTLAND COUNTY *v.* HILL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 29. Argued April 16, 17, 1889. — Decided November 4, 1889.

The negotiable security of a municipal corporation, invalid in the hands of the original holder by reason of an irregularity in its issue to which he was a party, but which becomes valid in the hands of an innocent purchaser for value without knowledge or notice of the irregularity, remains valid when acquired by another purchaser for value, who was no party to the irregularity, but who, at the time of his purchase, has knowledge of the infirmity, and of a pending suit against the original holder and others to have the whole issue declared invalid by reason thereof.

The litigations respecting the Scotland County bonds in the state courts and in the courts of the United States reviewed.

In the absence of a provision to the contrary, overdue coupons bear interest at the legal rate in the place where they are payable.

THIS action was commenced in the year 1876 to recover on coupons issued by the county of Scotland, in Missouri, in payment of a subscription to the stock of the Missouri, Iowa and Nebraska Railway Company. Answer was made. In 1879 an amended complaint was filed, and, issue being joined, such proceedings were had in the cause that judgment was entered for the plaintiff. To this judgment the defendant sued out a writ of error. Argument on this was had at October term 1884, which resulted in the remand of the cause for a new trial (112 U. S. 183). After the remand an amended answer was filed. Issue was joined and trial had, which resulted in a verdict for the plaintiff for $46,944, and judgment on the verdict. To this judgment the defendant sued out this writ of error. The case is stated as follows by the court in its opinion:

This writ of error brings up for review a judgment against the county of Scotland, in the State of Missouri, for the amount of certain coupons of bonds, bearing date September 1, 1870, and purporting to have been issued by that county to the Missouri, Iowa and Nebraska Railway Company, a cor-

poration created by the consolidation of the Alexandria and
Nebraska City Railroad Company, of Missouri, (formerly
known as the Alexandria and Bloomfield Railroad Company,)
with the Iowa Southern Railway Company, of Iowa. The
coupons are payable to bearer, at the Farmers' Loan and
Trust Company, New York, while the bonds are payable to
the above consolidated company, or bearer, at the same place,
on the 31st of December, 1895, with interest thereon from
December 31, 1870, payable annually in that city, at the rate
of eight per cent per annum. Each bond recites that it is
issued under and pursuant to an order of the county court, for
subscription to the stock of the Missouri, Iowa and Nebraska
Railway Company, "as authorized by an act of the General
Assembly of the State of Missouri, entitled 'An act to incor-
porate the Alexandria and Bloomfield Railroad Company,'
approved February 9, 1857."

It appeared in proof that the county court, in conformity
with the petition of taxpayers and residents, made an order,
on the 9th of August, 1870, for the subscription of $200,000
to the stock of the Missouri, Iowa and Nebraska Railway
Company, payable in coupon bonds of the above kind, and at
the same time designated an agent with authority to make
the subscription upon the books of the company, to represent
the county at the meetings of stockholders, and to receive
dividends on its stock. The order stated that the subscription
was upon certain specified terms and conditions, among which
was one providing for the delivery to the railway company
of $100,000 of the bonds when the road was "graded, bridged
and tied, the track laid, and the cars running thereon from
Alexandria, Missouri, to a permanent depot, located within
one-half mile of the court-house in Memphis," and for the
delivery of the remaining $100,000 of bonds when the road
was completed from Memphis to the west or north line of
the county and the cars were running over it. By the same
order the county attorney was directed to have the bonds
printed, the presiding justice of the county to sign them, and
the clerk to make proper attestation of his signature.

At the same time Charles Mety was appointed trustee for

the county, and charged, in that capacity, with the duty of receiving the bonds from the county clerk as soon as they were issued, and of delivering them to the railway company, in exchange for stock, upon its complying with the conditions specified in the order for the subscription. The trustee was required to give bond in the sum of three hundred thousand dollars, for the faithful performance of his trust.

On the 11th of September, 1871 — the road being then nearly completed to Memphis, the county seat — Levi Wagner and other taxpayers and citizens brought a suit in the Circuit Court of Scotland County to perpetually enjoin Mety from delivering the bonds or coupons to the railway company. It was alleged, as a principal ground for such relief, that the subscription made by the county, to pay which the bonds had been executed, was without proper legal authority, and, therefore, null and void. The defendants in that suit were Mety, the county trustee and custodian of the bonds; Fullerton, county treasurer; Dawson, Cooper and Marguis, justices of the county, and sitting as the county court at the time the subscription was made; and the Missouri, Iowa and Nebraska Railway company. A few days prior to September 20, 1871, Mety went to Warsaw, Illinois, taking with him $100,000 of the bonds, to be there delivered to the railway company, upon the completion of the road to Memphis. He and the justices of the county court had then heard of the institution of the Wagner suit, and he went to Warsaw, under the direction of the members of that body, in order to evade the service upon him of the proposed injunction. While there he received from Dawson and Cooper, a majority of the justices composing the county court, an official communication, under date of September 20, 1871, in these words: "The iron is laid on the Missouri, Iowa and Nebraska Railway to the depot and the building is up. The company having complied with all the requirements, you will please deliver them the first hundred thousand dollars of the county's subscription and receive stock for the same." He complied with this order by delivering the bonds, at Warsaw, on the same day, taking from the company, as suggested by the justices, its bond

indemnifying him against all damages, costs, expenses, etc., which he, as trustee for the county, might incur " by reason of certain injunction suits now pending in the Scotland County Circuit Court."  On the 11th of December, 1871, the county court, by an order entered upon its record, so modified the previous order of August 9, 1870, as to authorize Mety to deliver to the company the second instalment of $100,000 of bonds, upon the execution to him, as trustee, and to the county, of an indemnifying bond containing certain specified provisions.  Such an obligation was immediately executed by the company, and the second instalment of bonds was thereupon delivered to it by the court while in session at the county seat.

The Wagner suit was taken, by change of venue, to the Circuit Court of Shelby County, Missouri, by which a final decree was rendered on the 2d of June, 1874, declaring the bonds void, for the want of legal authority in the Scotland County Court to make the subscription of stock in the Missouri, Iowa and Nebraska Railway Company, and ordering them to be surrendered for cancellation.  This decree was affirmed by the Supreme Court of Missouri, at its October term, 1878.  That judgment of affirmance proceeded, mainly, upon the ground that, as the privilege given, by its charter of 1857, to the Alexandria and Bloomfield Railroad Company, afterwards the Alexandria and Nebraska City Railroad Company, (Laws of Missouri, 1865–6, 222,) of having municipal subscriptions without a previous vote of the people, was not exercised prior to the formation, by consolidation, in 1870, of the Missouri, Iowa and Nebraska Railway Company, such privilege passed, if at all, to the consolidated company, subject to the prohibition in the state constitution of 1865 against municipal subscriptions to corporations or companies, except upon the previous sanction of two-thirds of the qualified voters at a regular or special election for that purpose.  *Wagner* v. *Mety*, 69 Missouri, 150.  That ruling, the court said, was in harmony with its previous decision in *State ex rel. Wilson* v. *Garroutte*, 67 Missouri, 445.

*Mr. Henry A. Cunningham* for plaintiff in error.

*Mr. F. T. Hughes* for defendant in error. *Mr. J. H. Overall* was with him on the brief.

Mr. Justice Harlan delivered the opinion of the court. After stating the case as above reported, he continued:

The question of power in the county court to subscribe to the stock of the Missouri, Iowa and Nebraska Railway Company, without a previous vote of the people, and to issue bonds in payment of its subscription, was directly presented and determined, upon full consideration, in *County of Scotland* v. *Thomas*, 94 U. S. 682, decided in 1876. The coupons there in suit were of the same issue of bonds as those from which the coupons in the present suit were detached. It is true that that case was determined upon demurrer to the complaint. But that fact does not weaken the force of the decision, so far as it bears upon the question of legal authority in the county court to make the subscription. The record and opinion in that case show that it was stipulated between the parties that the question of subscribing to the stock of the Missouri, Iowa and Nebraska Railway Company had never been submitted to a vote of the qualified voters of Scotland County, and that, in determining the demurrer, the court should consider that fact, as if it had been averred in the complaint. It was also agreed that the court should consider as facts admitted the articles of consolidation between the Iowa Southern Railway Company and the Alexandria and Nebraska City Railroad Company, and the above orders of the county court of Scotland County. It was held that the privilege given to the Alexandria and Bloomfield Railroad Company, by its charter of 1857, of receiving county subscriptions, was not extinguished by the subsequent consolidation in 1870 of that company with other companies, but passed with its other rights and privileges into the new condition of existence arising from such consolidation; that, in making the subscription in that case, which is the identical subscription here in question, the county court acted " as the representative authority of the county itself, officially invested with all the discretion necessary to be exercised under

the change of circumstances brought about by the consolidation;" that the subscription was binding upon the county; and that the bonds issued in payment were valid obligations. It was also distinctly ruled, in accordance with *County of Callaway* v. *Foster,* 93 U. S. 567, and with previous decisions of the Supreme Court of Missouri, that the prohibition in the state constitution of 1865, of municipal subscriptions to the stock of, or loans of credit to, companies, associations or corporations, without the previous assent of two-thirds of the qualified voters at a regular or special election, had the effect to limit the future exercise of legislative power, but did not take away any authority granted before that constitution went into operation. The doctrines of that case were reaffirmed in *County of Henry* v. *Nicolay,* 95 U. S. 619, 624, (1877;) *County of Schuyler* v. *Thomas,* 98 U. S. 169, 173, (1878;) *County of Cass* v. *Gillett,* 100 U. S. 585, 592, (1879;) and *County of Ralls* v. *Douglass,* 105 U. S. 728, 731, (1881) — all cases arising in the State of Missouri, and relating to municipal bonds, issued under legislative authority granted before the adoption of the constitution of 1865. See also *Menasha* v. *Hazard,* 102 U. S. 81; *Green County* v. *Conness,* 109 U. S. 104; and *Livingston County* v. *Portsmouth Bank,* 128 U. S. 102. In *County of Ralls* v. *Douglass* attention was called to *State ex rel. Wilson* v. *Garroutte,* 67 Missouri, 445, and *State ex rel. Barlow* v. *Dallas County,* 72 Missouri, 329, holding views different as well from those announced by this court in the cases above cited, as those previously announced by the state court in *State* v. *Macon County Court,* 41 Missouri, 453, *Kansas City &c. Railroad Co.* v. *Alderman,* 47 Missouri, 349, *Smith* v. *Clark County,* 54 Missouri, 58, 70, and *State* v. *County Court of Sullivan,* 51 Missouri, 522. But this court declined to reconsider its former decisions to the prejudice of *bona fide* holders of bonds issued prior to the change of decision in the state court. The bonds, the coupons of which are here in suit, were all issued in 1871, at which time the highest court of Missouri held that the above constitutional provision, as to municipal subscriptions or the loaning of municipal credit to corporations without a previous vote of the people, was in-

tended, (to use the language of *County of Ralls* v. *Douglass,*) " as a limitation on future legislation only, and did not operate to repeal enabling acts in existence when the constitution took effect."

We pass to the consideration of the controlling question in the case, namely, whether Hill's rights, as a holder of these coupons for himself and others, are affected by the final decree in the suit instituted in the state court by Wagner and others.

At the first trial of the present action, the county offered to read in evidence the record of the Wagner suit in support of its plea averring, among other things, that Hill, and each previous holder of these coupons, had full, actual notice of the institution and object of that suit. It also offered to read in evidence the indemnifying bond of September 21, 1871, and, also, to prove by Mety, the trustee of the county, that he had actual notice of the pendency of the Wagner suit, at the time he delivered the bonds to the Missouri, Iowa and Nebraska Railway Company. There was also an offer to prove that the railway company "and *each* subsequent holder" received the bonds with actual notice of the pendency of that suit. The Circuit Court excluded all of this evidence. This court held that such exclusion was improper, and for that reason the judgment was reversed and the cause remanded for a new trial. *Scotland County* v. *Hill*, 112 U. S. 183.

Chief Justice Waite, delivering the opinion of the court, said : " The suit was about the bonds, and the liability of the county thereon. The decree was in accordance with the prayer of the bill, and certainly concluded both Mety [1] and the railroad company. After the rendition of this decree, the company could not sue and recover on the bonds, because, as between the company and the county, it had been directly adjudicated that the bonds were void and of no binding effect on the county. But it is equally well settled that the decree binds not only Mety and the company, but all who bought the bonds after the suit was begun, and who were chargeable

---

[1] In the original opinion of the Chief Justice, this name is uniformly printed " Metz." This error is followed in the report of the case in 112 U. S.

with notice of its pendency, or of the decree which was rendered. The case of *County of Warren* v. *Marcy*; 97 U. S. 96, decides that purchasers of negotiable securities are not chargeable with *constructive* notice of the pendency of a suit affecting the title or validity of the securities; but it has never been doubted that those who buy such securities from litigating parties, with *actual* notice of the suit, do so at their peril, and must abide the result the same as the parties from whom they got their title. Here the offer was to prove *actual* notice, not only to the plaintiff when he bought, but to every other buyer and holder of the bonds from the time they left the hands of Mety, pending the suit, until they came to him. Certainly, if these facts had been established, the defence of the county, under its fourth plea, would have been sustained; and this whether an injunction had been granted at the time the bonds were delivered by Mety or not. The defence does not rest on the preliminary injunction, but on the final decree by which the rights of the parties were fixed and determined.".

The court also said: "It is a matter of no importance whether the decision in the Wagner suit was in conflict with that of this court in *Scotland County* v. *Thomas, supra*, or not. The question here is not one of authority but of adjudication. If there has been an adjudication which binds the plaintiff, that adjudication, whether it was right or wrong, concludes him until it has been reversed or otherwise set aside in some direct proceeding for that purpose. It cannot be disregarded any more in the courts of the United States than in those of the State."

It appears from the bill of exceptions taken at the last trial, resulting in the judgment now before us for review, that the county sought by evidence introduced in its behalf to support the charge of actual notice of the Wagner suit upon the part, as well of Hill, as of each previous holder of the bonds the coupons of which are here in suit. There was proof by the plaintiff tending to show that the bonds delivered by Mety to the railroad company were passed by that corporation to the company that built the road, in payment for construction, and that they were sold, for value, by the latter to various parties in different parts of the country, who had no notice whatever

of the institution or object of the Wagner suit. There was also evidence tending to show that the parties owning the coupons immediately before they were delivered to Hill for himself, and for others whom he represented, were all purchasers for value, without notice of the injunction suit, or of any infirmity in the bonds.

The county asked an instruction to the effect that "if at the time or times of making purchases of either of the coupons in this suit declared upon, William Hill, the plaintiff, had actual knowledge of the pendency of or judgment in the case of *Levi J. Wagner et al.* v. *Charles Mety et al.*, and if the jury so find, they are instructed that as to any such coupon purchased by plaintiff, whether for himself or as agent for other persons, no recovery of judgment can be herein had." The court refused to so instruct the jury, but instructed them, in substance, that the ownership of the coupons by a prior holder under such circumstances as would protect that holder against any defence by the county, entitled Hill to recover, even if he, when afterwards purchasing for himself or others, had knowledge of the pendency of the Wagner suit. That this was the meaning of the court is quite clear from the following extracts from its charge to the jury : " This paper is valid in the hands of a party who received it for value without actual notice of the pendency of the suit of Wagner and others; but if he and each intermediate party from the first delivery of these bonds and coupons also had notice of such suit or other infirmity, then no recovery can be had. . . . If the obligations sued on were duly executed, as above mentioned, and delivered by said Mety, and were thereafter purchased for value by the plaintiff from persons who had acquired the same for value without notice of said suit or of any fraud in the execution and delivery of the same, as above stated, then as to such obligations the plaintiff is entitled to recover. On the other hand, if the plaintiff and each of the persons through whom he derived title had actual notice of said Wagner suit, or of the delivery of said obligations by Mety to escape said suit, known to be about to be instituted, then as to such of said obligations there can be no recovery. . . . One link broken in the chain breaks the chain."

As there was no evidence tending to show that Hill was a party to the scheme devised by the county officers and the railway company for the delivery of the bonds to the latter before the injunction suit should be ripe for a decree, we are of opinion that the court did not err in its instructions to the jury.

The bonds were delivered to the railway company at the office of the bank in Warsaw, Illinois; of which Hill was president. And it is, perhaps, true, that Hill had then heard of the Wagner suit, and knew or suspected that Mety's purpose in bringing the bonds to Warsaw was to deliver them to the company before the injunction could be served upon him. But he had no connection with the conspirators, nor did he or any of the parties represented by him have, at that time, any interest in the coupons. It is said that the construction company received the bonds with actual notice, upon the part of one of its chief officers, of the injunction suit. But there can be no claim that any of the holders of the coupons, intermediate between the construction company and Hill, had any such notice. Be that as it may, the question as to such notice was properly submitted to the jury.

The principles of law by which this question must be determined are well settled. In *Commissioners of Douglas County* v. *Bolles*, 94 U. S. 104, which involved the rights of parties claiming to be *bona fide* holders of certain municipal bonds, issued to a railroad corporation, and by it passed to the contractor who built its track, the court, after observing that the plaintiffs could call to their aid the fact that their predecessors in ownership were *bona fide* purchasers, said: "And still more, the contractor for building the railroad received the bonds from the county in payment for his work, either in whole or in part, after his work had been completed. There is no pretence that he had notice of anything that should have made him doubt their validity. Why was he not a *bona fide* purchaser for value? The law is undoubted that every person succeeding him in the ownership of the bonds is entitled to stand upon his rights." In *Cromwell* v. *County of Sac*, 96 U. S. 51, 59, it was said that, with some exceptions that have no relevancy here, "the rule has been too long settled to be

questioned now, that whenever negotiable paper has passed into the hands of a party unaffected by previous infirmities, its character as an available security is established, and its holder can transfer it to others with the like immunity. His own title and right would be impaired, if any restrictions were placed upon his power of disposition." So, in *Roberts* v. *Lane,* 64 Maine, 108, 111, it was said that "if any intermediate holder between the plaintiff and defendant took the note under such circumstances as would entitle him to recover against the de-fendant, the plaintiff will have the same right, even though he may have purchased when the note was overdue, or with a knowledge of its infirmity, as between the original parties." See, also, *Montclair* v. *Ramsdell,* 107 U. S. 147, 159; *Porter* v. *Pittsburg Steel Co.,* 122 U. S. 267, 283; *Mornyer* v. *Cooper,* 35 Iowa, 257, 260; *Kost* v. *Bender,* 25 Michigan, 515; Byles on Bills, 119, 124.

It is objected that there was error in allowing interest at the rate of seven per cent upon the coupons after their matur-ity. Such allowance was proper for the reason that the coupons (which, as well as the bonds, were silent, as to the rate of interest after maturity) were made payable in New York, where the rate as then established by law was seven per cent. Rev. Stats. N. Y., 771, Part 2, c. 4, Title 3, § 1; Act of June 20, 1879, Laws of 1879, c. 538, p. 598. In *Bank of Louisville* v. *Young,* 37 Missouri, 398, 407, the rule was recog-nized that "interest is to be paid on contracts according to the law of the place where they are to be performed; where inter-est is expressly or impliedly to be paid." *Andrews* v. *Pond,* 13 Pet. 65, 73, 77, 78; Story's Conflict of Laws, § 291. In re-spect to interest on the amount for which judgment was ren-dered, we are of opinion that the law of Missouri governs, and the judgment must bear only six per cent interest. 1 Rev. Stats. Missouri, 1879, §§ 2723, 2725.

*The judgment of the court below is affirmed, to bear interest from the date of its rendition at the rate of six per cent per annum. The objection that some of the coupons in-cluded in the present judgment were, in fact, included in former judgments against the county, is without founda-tion.*