In re CHICAGO, R. I. & P. RY. CO.

TRAPHAGEN et al. v. FLEMING et al.
Nos. 8928, 8946.

Circuit Court of Appeals, Seventh Circuit.
June 17, 1946.

Daniel James and Arthur L. Petersen, both of New York City (Cahill, Gordon, Zachry & Reindel, of New York City, of counsel), for appellants.

Edward K. Hanlon, of New York City, Otis F. Glenn and W. F. Peter, both of Chicago, Ill., and Wilkie Bushby, Harry Kirshbaum, Root, Ballantine, Harlan, Bushby & Palmer, Rathbone, Perry, Kelley & Drye, Alexander M. Lewis, Sherman & Sterling & Wright, Sanford H. E. Freund, and Beekman & Bogue, all of New York City, for appellees.

Michael Geasas, of Chicago, Ill., for Convertible Bondholders Group.

Before EVANS, SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellants, constituting a protective committee for the holders of bonds secured by first mortgage on 280 miles of railroad extending from the Mississippi river near Memphis to the Arkansas-Oklahoma line, complain of an order of the District Court refusing to award them interest upon the matured coupons. The issue arose in proceedings under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, for reorganization of the Chicago, Rock Island and Pacific Railway Company and certain subsidiary corporations owning and operating some 8000 miles of railroad. These bonds were issued January 2, 1899, secured by mortgage on the entire line of the Choctaw & Memphis R. R. In 1900 that company sold all its property to the Choctaw, Oklahoma & Gulf R. Co., commonly known as the C. O. & G., subject to the bond issue of $3,524,000, which the purchaser as-

sumed. The C. O. & G., then owning approximately 1000 miles of railroad, in 1902 sold its capital stock and leased its lines for 999 years to Rock Island.

The proceedings in the bankruptcy court was filed June 7, 1933. The C. O. & G. petitioned that it be allowed to effect reorganization as a part of that of the Rock Island System. Trustees were appointed for both the principal debtor and the subsidiary debtors, but operation of the entire system has at all times been continued by the trustees of the principal debtor.

In the reorganization plan, confirmed by the District Court and now in process of consummation, the court directed that the C. & M. bonds should not be affected by the reorganization, a conclusion inspired undoubtedly by the fact that it is undisputed that these bonds are adequately secured and that the annual earnings properly allocable to the division upon which they are a lien exceeds substantially the interest requirements. It follows from the District Court's findings and judgment that the bonds of the C. & M. are no part of the reorganization, in no wise affected by it, and, so far as rights and remedies are concerned, occupy the same position they would have had there been no bankruptcy.

From time to time during the twelve years in which the reorganization has been pending, appellants petitioned the District Court to allow to them their interest as it matured and, after maturity of the coupons, interest upon the coupons. Originally there was an appeal also from an order refusing payment of the principal of the mature coupons, but, subsequent to appeal, the trustees petitioned for and obtained leave to, and did pay the C. & M. bondholders the face amount of the coupons, so that the appeal now involves only the question of whether appellants are entitled to simple interest upon the coupons after their maturity. At one time payment of interest upon certain coupons was directed, but this was without prejudice to the rights of all parties and can not be considered as any precedent against appellees. Final action was postponed upon the question of interest upon matured coupons until the fall of 1945, when the court held that appellants were not entitled to it.

Early in the course of the proceedings, the court ordered sequestration of funds from the respective parts of the railroad system but that procedure made necessary expenditure of so much time and money that the practice was abandoned. The court, however, entered an order providing that all bondholders' rights should be preserved as if presentment and demand for payment had been made and default in payment had occurred.

Our rather narrow question, therefore, is whether the holders of these bonds, adequately secured, protected by income greatly in excess of interest requirements and expressly excluded from the operation of a plan, may, under the circumstances of this case, recover interest upon coupons as a part of their secured indebtedness after the dates of maturity. Though simple in character the question does not lend itself to a too easy solution.

As we have seen, these bonds are not subject to, involved in or affected by the reorganization. They bear coupons for interest maturing at stated intervals. The coupons are void of express covenant as to interest after maturity as are likewise the bonds themselves and the mortgage securing them. The latter provides security for the payment of principal and interest "according to the true intent and meaning" or "tenor" of the bonds and coupons.

In these circumstances the bankruptcy court was bound to allow or disallow such interest as the pertinent law makes mandatory. True, the Bankruptcy Act, Section 77, endows the court with power to reduce, modify and extend security of debts if found necessary in order to effectuate a fair and equitable plan of reorganization. It is the purpose of the section that the court shall so reorganize the debtor as to result in no excessively over-capitalized financial structure, in order that income may meet fixed charges and costs of operation. But this power to deal with or modify securities, we think, in no way affects appellants who are no part of the reorganization but constitute secured holders of

instruments wholly unaffected thereby. Hence it is improper to say that the bankruptcy court had the power to alter their securities. Indeed, quite the contrary is true, for, in their preferred situation, they hold securities wholly outside the reorganization. Their position is that of a mortgagee in ordinary bankruptcy where the bankrupt estate is concerned only with the equity over and above the securities of the mortgage holder and the mortgage is to be paid in full before the subordinate or unsecured creditors participate at all. Thus in discussing the rights of a mortgagee in a bankruptcy case, in Coder v. Arts, 8 Cir., 152 F. 943, at page 950, 15 L.R.A., N.S., 372 the court said: "By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge. Another rule might prevail if the proceeds of the mortgaged property were insufficient to pay the mortgage debt and its interest in full and the mortgage was seeking to collect an unpaid balance by sharing with other creditors in the distribution of the common property. * * * But the proceeds of these mortgaged lands appear to be ample to pay the principal and interest of the debt to the mortgagee Arts, and where a trustee sells mortgaged property of the bankrupt's estate free of the mortgage, and the proceeds of the sale are sufficient for that purpose, the mortgagee is entitled to payment of the interest upon his mortgage debt as well as the principal, out of the proceeds in accordance with the terms of the note and mortgage." In Coder v. Arts, 213 U.S. 223, at page 245, 29 S.Ct. 436, at page 445, 53 L.Ed. 772, 16 Ann.Cas. 1008 the Supreme Court said, in affirming the decision, "nor do we think the circuit court of appeals erred in holding that, inasmuch as the estate was ample for that purpose, Arts (mortgagee) was entitled to interest on his mortgage debt."

The ordinary bankruptcy trustee succeeds to a bankrupt's title to encumbered property, subject to the encumbrance. If there is no equity for the estate over and above the lien, he is not required to accept it, and if, under the local law, the income of the mortgaged property would go to the mortgagee, that rule will abide in the bankruptcy court. In re Wakey, 7 Cir., 50 F.2d 869, 75 A.L.R. 1521; In re De Tamble, 7 Cir., 88 F.2d 893. "The mortgagee is the equitable owner of the bankrupt's real estate covered by the mortgage, and it would be inequitable to take the rents from what is really his property and divide them among general creditors. In re Industrial Cold Storage & Ice Co., D. C., 163 F. 390; In re Torchia, 3 Cir., 188 F. 207; In re Dooner & Smith, 2 Cir., 243 F. 984; Bindseil v. Liberty Trust Co., 3 Cir., 248 F. 112. This is the trend of decisions generally. Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28; In re Wakey, 7 Cir., 50 F.2d, 429, 869, 75 A.L.R., 1521." Associated Co. v. Greenhut, 3 Cir., 66 F.2d 428, writ of certiorari denied in 290 U.S. 695, 696, 54 S.Ct. 131, 78 L.Ed. 598. And when liens are of different dignity, claims of a higher rank will be paid in full with interest during receivership, even though no assets are available to pay those of lower grade. Board of Com'rs v. Bernardin, 10 Cir., 74 F.2d 809. We think it has never been successfully contended in bankruptcy proceedings that a secured creditor is not entitled to interest accruing up to the time of payment to him, if the encumbered assets are sufficient to satisfy his entire claim. As has been suggested, any other result would lead to destruction of valid liens. See Peoples Homestead Ass'n v. Bailette, 5 Cir., 33 F.2d 561; San Antonio Loan & Trust Co. v. Booth, 5 Cir., 2 F.2d 590; In re Alpine Petroleum Corp., D.C., 41 F. Supp. 682.

So here, appellants, adequately secured, must receive "their full bundle of rights" before the principal debtor or any of the subsidiary debtors have any right in equity

893

or law to any part of the property securing their bonds. It follows, therefore, it seems to us, that the court must determine the rights of appellants wholly free of any significance of the bankruptcy proceedings. It must determine what the bonds, coupons and mortgage mean and enforce them according to their "true intent and meaning" and "tenor".

■■ This leads to the question of how those rights are to be interpreted. The coupons, at the option of appellants, were payable in Philadelphia. In the absence of other significant circumstances, the right of the holder of a matured coupon to receive interest thereon is determinable by the place where the coupon is payable. Andrews v. Pond, 13 Pet. 65, 77, 78, 10 L.Ed. 61; Pana v. Bowler, 107 U.S. 529, 546, 2 S.Ct. 704, 27 L.Ed. 424; Scotland County v. Hill, 132 U.S. 107, 117, 10 S.Ct. 26, 33 L.Ed. 261; Cairo v. Zane, 149 U.S. 122, 142, 13 S.Ct. 803, 37 L.Ed. 673; Hughes County, S. D., v. Livingston, 8 Cir., 104 F. 306, 322, certiorari denied 181 U.S. 623, 21 S.Ct. 926, 45 L.Ed. 1033; Roswell Drainage Dist. v. Parker, 10 Cir., 53 F.2d 793, 797; Restatement of the Law of Conflict of Laws, Sections 413, 417. And in Pennsylvania, it seems to be undisputed, interest coupons are negotiable instruments which may be detached from the bonds and reduced to judgment by the holder separately from the bond. Interest upon them is payable after maturity, even in the absence of any covenant to that effect; the coupons pass from hand to hand by delivery as do promissory notes payable to bearer, and public policy requires that punctual payment of interest should be enforced by obliging the debtor to compensate his creditors for default, by paying interest upon the amount due. The coupons are promises to pay liquidated interest on a certain definite date. On that date they mature. Thereafter the Statute of Limitation begins to run against them, even though the bonds have not matured, and, like other negotiable instruments and other undisputed liquidated demands for money, they bear interest from the date of maturity. County of Beaver v. Armstrong, 44 Pa. 63, 8 Wright 63; North Pa. R. Co. v. Adams, 54 Pa. 94, 93 Am.Dec. 677; Philadelphia & R. R. Co. v. Knight, 124 Pa. 58, 16 A. 492; Appeal of Cadwalader et al., 249 Pa. 239, 94 A. 833; McDowell v. North Side Bridge Co., 251 Pa. 585, 97 A. 97.

We might observe incidentally, but incidentally only, as we view the law, that such has likewise been the ruling of federal courts where the question has been squarely presented. Gelpcke et al. v. City of Dubuque, 1 Wall. 175, 17 L.Ed. 520; Aurora City v. West, 7 Wall. 82, 19 L.Ed. 42; Town of Genoa v. Woodruff et al., 92 U.S. 502, 23 L.Ed. 586; Cromwell v. County of Sac, 96 U.S. 51, 24 L.Ed. 681; Brine v. Insurance Co., 96 U.S. 627, 24 L.Ed. 858; Amy v. Dubuque, 98 U.S. 470, 25 L.Ed. 228; Town of Koshkonong v. Burton, 104 U.S. 668, 676, 677, 26 L.Ed. 886; Edwards v. Bates County, 163 U.S. 269, 272, 16 S.Ct. 967, 41 L.Ed. 155; Roswell Drainage Dist. v. Parker, 10 Cir., 53 F.2d 793, 797; Sears v. Greater New York Development Co., 1 Cir., 51 F.2d 46, 49, certiorari denied 284 U.S. 668, 52 S.Ct. 42, 76 L.Ed. 565. Thus the Supreme Court said, in Aurora City v. West, supra, "Where there is a contract to pay money on a day fixed, and the contract is broken, interest, as a general rule, is allowed, and that rule is universal in respect to bills and notes payable on time. Governed by that rule this court in the case of Gelpcke v. Dubuque, held that the plaintiff, in a case entirely analogous, was entitled to recover interest." And in Cromwell v. County of Sac, 96 U.S. 51, 24 L.Ed. 681, the court said "it follows, from the views expressed, that the plaintiff was entitled to judgment for the amount of the four bonds and the coupons in suit, with interest on the bonds after maturity until judgment at the rate of ten per cent a year, and with interest on the coupons after their maturity until judgment at the rate of six per cent a year."

■ We believe, however, that federal decisions are of no binding effect here, but rather that, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, where the bankruptcy court is charged with the

duty of protecting a lien unaffected by bankruptcy, the law of the state of performance must control. Of course the bankruptcy court determines all questions arising under the bankruptcy statute in accord with federal decisions, but when it deals with the right of a citizen to enforce a lien under the state law, unaffected by bankruptcy, or interprets the rights of the mortgagee, it must grant relief demanded by the laws of the state. American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949; In re American Fuel & Power Co., 6 Cir., 151 F.2d 470; Investors Syndicate v. Smith, 9 Cir., 105 F.2d 611, at page 620. Accordingly it is apparent, therefore, that when we interpret the mortgage securing the coupons according to the "tenor thereof," as determined by the state of Pennsylvania, the holders are entitled to simple interest on the coupons after their maturity.

Appellees suggest that, inasmuch as the mortgage does not specifically mention a lien for interest upon matured coupons, appellants have "given up" ·or have failed to preserve a mortgage lien for such interest. But we have seen that the indenture pledges the property to secure the payment of principal and interest according to "the true tenor" of the bonds and interest and that the true legal tenor of the coupons, properly interpreted, includes a legal obligation to pay interest after maturity. It follows that, by its necessary legal implication, the mortgage creates and preserves a lien for the bonds, coupons and simple interest on the coupons after maturity.

Appellees argue that it is not fair and equitable to other creditors to provide for such payment of interest on matured coupons and that it is discriminatory so to do. The fallacy of this reasoning lies in the fact that appellants are not a part of the plan and have no part in the reorganization but constitute prior parties in interest who, the court has expressly found, are fully secured, and, therefore, shall not be affected by the plan and whose security shall remain unaffected by it.

We conclude that the court was in error in refusing to allow and order paid simple

interest on the coupons after their respective dates of maturity.

The judgment is reversed with directions to proceed in accord with this opinion.