# WILLIAM J. SHANAHAN ET AL.

## vs.

## STATE OF MARYLAND, TO THE USE OF THE COUNTY COMMISSIONERS OF HARFORD COUNTY.

*County Treasurer—Suit on Bond—Uncollected Taxes—County Commissioners—Accord and Satisfaction—Moneys Legally Collectible—Instructions.*

A suit on the bond of a county treasurer is properly brought in the name of the State of Maryland to the use of the county commissioners. p. 627

County commissioners have implied power to enter into an accord and satisfaction in regard to a claim upon the county treasurer's bond on account of the treasurer's failure properly to account for and pay over moneys collected by him as taxes.

pp. 628, 629

That the claim upon the treasurer's bond is in part on account of taxes collected by him which belong to the State does not affect the power of the commissioners to enter into an accord and satisfaction in regard thereto. p. 629

A county treasurer's bond conditioned for the faithful performance of his duties in paying over and accounting for all moneys that shall be "legally collectible" by him does not make him an insurer of tax bills placed in his hands, irrespective of whether there is any property out of which collection can be made. p. 631

Taxes upon stock in a corporation, which has ceased to exist or has been dissolved, and upon chattels, which have been entirely consumed or have disappeared, before the tax bills reach the hands of the collector, are not "legally collectible."

p. 632

Since property under the control and jurisdiction of the court is exempt from seizure and sale for taxes, taxes thereon may not be legally collectible during the period fixed by law within which the collector shall perform his duties. p. 632

That the only return made by the county treasurer to the county commissioners as to unpaid tax bills was in regard to "insolvency," he not returning any list of defunct corporations the taxes on the stock in which were uncollectible, or of chattels no longer in existence, and he not showing that, in the case of property *in custodia legis,* he applied to the court for leave to sell or for an order according priority to taxes out of the proceeds, did not justify a refusal by the commissioners to make him an allowance for any proper items.            p. 633

In an action on the bond of a county treasurer, a prayer offered by plaintiff which took no account of property *in custodia legis* or of property which had ceased to exist, the taxes on which were consequently uncollectible, *held* improperly granted.            p. 634

In an action on the bond of a county treasurer, a prayer which embraced both the liability which might exist for cash collected by the treasurer, and losses which might have resulted from a dereliction of duty, *held* improperly granted.

p. 634

In an action on the bond of a county treasurer, *held* that it was for the defendants to show that the treasurer used due diligence in his endeavor to collect all the taxes set out in the levy delivered to him, and that his failure to collect some of them was not due to any omission or lack of diligence on his part.            p. 635

A county treasurer and the sureties on his bond are not relieved of liability, on account of non-collection of taxes, due to dereliction on his part, by reason of the fact that his successor in office is authorized to receive such taxes.            p. 635

A statute providing that a county treasurer shall not be relieved from liability for unpaid taxes unless the claim for such release shall be under oath, *held* not to require the oath to be that of the treasurer himself, the oath of any person so cognizant of the facts as to be able to make the oath being sufficient.            p. 635

*Decided January 31st, 1923.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Action by the State of Maryland, to the use of the County Commissioners of Harford County, against William J. Shanahan and the United States Fidelity and Guaranty Company. From a judgment for plaintiff, defendants appeal. Reversed.

The offered prayers were as follows:

*Plaintiff's First Prayer.*—The plaintiff prays the court to instruct the jury that it is conceded in this case that the defendant, William J. Shanahan, was elected treasurer of Harford County for the second time in the fall of 1913 and entered upon the discharge of his duties on the first day of May, 1914, and executed a bond in the penalty of $25,000.00 for the faithful performance of his duties as collector of county taxes for the year beginning on the first day of May, 1914, and ending on the 30th day of April, 1915, under the provisions of chapter 128 of the Acts of the General Assembly of Maryland for 1912, under the provisions of which act he was holding office, with the defendant, the United States Fidelity and Guaranty Company, as surety, and that said bond was duly presented to the County Commissioners of Harford County, as required by law, and was by them duly approved and recorded in the office of the clerk of the court for Harford County (a certified copy of said bond with the approval thereon having been offered in evidence in this case); and if the jury find from the evidence that on the 30th day of April, 1914, the County Commissioners of Harford County, the equitable plaintiff in this case, fixed the tax levy for the year 1914, and furnished the defendant, William J. Shanahan, treasurer, with the levy list, giving the names of each of the taxpayers in Harford County and the amount of property upon which they were required to pay taxes, at the rate fixed by said County Commissioners, and that the said William J. Shanahan accepted said levy list and

charged himself with the amount thereof on the proper books in his office, and proceeded to collect the taxes for 1914; then the jury are further instructed that it became and was the duty of the said William J. Shanahan to well and truly collect and pay over and account for all of the county taxes for 1914 so placed in his hands for collection, except such of said tax bills as should be determined by the County Commissioners to be erroneous or insolvent, and if the jury further find from the evidence that the said William J. Shanahan as treasurer of Harford County for the aforesaid year, failed to collect and account for any part of said county taxes so placed in his hands for collection, except those that had been allowed as erroneous or insolvent by the County Commissioners of Harford County, as provided in said act; then the jury are instructed that they must find their verdict for the plaintiff for such amount of unpaid taxes and unaccounted for balance as they may find to be due the plaintiff in this case, with interest from the first day of September, 1914. (*Granted.*)

*Plaintiff's Second Prayer.*—The plaintiff's prays the court to instruct the jury that if they find from the evidence that the only testimony produced in this case showing an examination by experts, of the accounts of the defendants, William J. Shanahan, as treasurer of Harford County for the fiscal year beginning May 1st, 1914, and ending April 30th, 1915, was made by Haskin & Sells for the plaintiff and by William R. Weber, auditor for the United States Fidelity and Guaranty Company, for the defendants, and if they further find from the said testimony that the expert accountants produced on the part of the plaintiff testified that the uncollected county taxes for said fiscal year amounted to $1,952.68, after deducting all erroneous and insolvent tax bills for said fiscal year for which they could find authority for said deductions by the County Commissioners of Harford County, and the defendant's expert accountant, William R. Weber, testified that the uncollected county taxes for the said fiscal year

amounted to the sum of $1,692.73, after allowing all deductions for erroneous and insolvent county taxes, as shown by the books in the office of the said William J. Shanahan, treasurer as aforesaid, then the jury are instructed that their verdict must be for the plaintiff for at least $1,692.73 being the amount admitted by the defendants as uncollected county taxes for said fiscal year for which no insolvencies were allowed, together with such further sum as they may find to be due unaccounted for, referred to in the pleadings and evidence in this case as "unaccounted for differences"; with interest on the total amounts so found from the first day of September, 1914. (*Granted.*)

*Plaintiff's Third Prayer.*—The plaintiff prays the court to instruct the jury as a matter of law, that the defendant, William J. Shanahan, treasurer of Harford County for the fiscal year beginning May 1st, 1914, and ending April 30th, 1915, was required to collect the amount of the tax levy placed in his hands for said fiscal year and account for the same, and the only credits he can claim in this case are such sums as he has properly accounted for, as required by chapter 128 of the Acts of 1912 (said act being Local Laws of Harford County defining the duties of the county treasurer) and such further credits as the County Commissioners of Harford County allowed him for erroneous or insolvent tax bills for which he furnished satisfactory proof under oath, and that the bond sued on in this case is liable for any unaccounted for balance of the county tax levy, by the defendant, William J. Shanahan, as treasurer for said fiscal year, for which he has not obtained proper credit allowance by the County Commissioners, as aforesaid, whether said unaccounted for balance is represented to be uncollected county taxes or cash, and if the jury find from the evidence that the defendant has failed to collect and account for any part of the tax levy for said fiscal year for which he has not obtained proper credit or allowance from the said County Commissioners, as provided in said chapter 128 of the Acts of 1912,

then their verdict must be for the plaintiff, for the amount so due, with interest from the first day of September, 1914, provided however, that the jury are not at liberty in their findings to exceed the amount of the penalty of the bond sued on, to wit, the sum of $25,000.00.   (*Granted.*)

*Plaintiff's Fourth Prayer.*—The jury are instructed at the request of the plaintiff that they cannot take into consideration in determining the amount due the plaintiff in this case for the year 1914, the audit made by William A. Gillespie and offered in evidence by the defendants because according to the testimony and report itself, the said William A. Gillespie did not make an examination of the Treasurer's office for the year 1914 but only gave the totals for that year as shown by the ledger of the defendant Shanahan.  (*Granted.*)

*Defendants' First Prayer.*—The right and duty of collecting unpaid taxes at the expiration of the term of office of the defendant Shanahan devolved upon William A. Wheeler, his successor in said office, and said defendant was without power or authority to collect the same after he retired from office, and if the jury find that there were on the 1st day of May, 1918, unpaid taxes for the year 1914, such unpaid taxes are not chargeable to the defendants unless the jury find that said taxes were lost by reason of some neglect of duty of the defendant, Shanahan.  (*Refused.*)

*Defendants' Second Prayer.*—If the jury find that there were on May 1st, 1918, unpaid taxes for the year 1914, and that on said date the defendant, Shanahan, was succeeded in the office of county treasurer of Harford County by William A. Wheeler, then it became the duty of said Wheeler to proceed to collect said taxes, and the burden is upon the plaintiff to show that due efforts were made by said Wheeler for such purpose, and said taxes cannot be charged to the defendants unless the jury find that the failure to collect said taxes was due to the negligence of duty of the defendant, Shanahan.  (*Refused.*)

*Defendants' Third Prayer.*—By the local laws of Harford County relating to "taxes and county treasurer" offered in evidence, the duty of collecting all taxes in arrear and unpaid at the expiration of the term of office of the defendant, Shanahan, devolved upon his successor, William A. Wheeler, and the said Wheeler was empowered and required to collect the same, and he could not decline to perform said duties, because four years had expired since said taxes were levied, except as to any tax bill where the taxpayer owing the same, pleaded the statute of Limitations. (*Refused.*)

*Defendants' Fourth Prayer.*—The law under which the defendant Shanahan exercised his office contemplates balances of unpaid taxes, extending from one year to another, and passing from the term of one county treasurer to that of his successor, and if the jury find that said defendant, on or about the expiration of the tax year, succeeding the levy of 1914, presented to the equitable plaintiff, a list of all unpaid taxes on personal property for said year, and represented to them that the same could not be collected and the said plaintiffs examined the same, and allowed some of said taxes as insolvencies, but refused to allow others, it was the duty of said defendant to continue his best efforts to collect said unpaid taxes, although the time within which he could sell by the summary process provided by said law had passed. (*Refused.*)

*Defendants' Fifth Prayer.*—Under the general laws of this State, and the local laws of Harford County, the equitable plantiffs are charged with the care of the finances of said county, and the preservation and expenditure of all funds raised by taxation, and the county treasurer of said county is required to account to said plaintiffs for the proceeds of all taxes placed in his hands for collection, and whenever there are balances of unpaid taxes, which the said plaintiff thinks wise not to have returned insolvent, they may, in their discretion continue said balances on the unpaid tax list of said county, if they believe it better to take the chances of

realizing therefrom later rather than disposing of them as insolvencies immediately, and if the jury find that the said plaintiffs and said Shanahan conferred on several days during the month of May, 1918, about the affairs of the latter's office and the closing thereof, and the unpaid taxes in his hands, and disagreed as to the amount of cash due by him, and later it was agreed and settled between them that the defendant was to make payment of a sum of about $2,400 in full of the amount of cash fixed by the auditors of the plaintiff, as due by said defendant and in excess of what the defendant admitted as due, and that all balances of taxes except the amounts allowed as insolvencies were to be held by the succeeding treasurer for collection, such a settlement was within the power of the said plaintiffs to make, and if the jury believes such a settlement was made, and that said defendant performed his part of said agreement, then the plaintiffs are not entitled to recover in this suit, and the verdict of the jury must be in favor of the defendant. (*Refused.*)

*Defendants' Sixth Prayer.*—The defendants pray the court to instruct the jury, as a matter of law, that the defendant, Shanahan, upon his retirement from office, when he submitted his statement to the County Commissioners of Harford County, to which was attached a list of uncollected taxes, was not required to make oath that he had used every effort to collect said taxes. (*Refused.*)

The plaintiff excepted specially to the defendants' Fourth and Fifth Prayers, as follows:

*Plaintiff's Special Exceptions to Defendants' Fourth Prayer.*—1. The plaintiff specially excepts to defendants' fourth prayer because there is no evidence in this case legally sufficient to establish the fact that the defendant Shanahan presented to the equitable plaintiff a list of all unpaid taxes on personal property for the year 1914 on or about the expiration of the tax year succeeding the levy of 1914.

2. And the plaintiff further excepts to said fourth prayer of the defendants because there is no evidence in this case

that the equitable plaintiff ever refused to allow the defendant Shanahan proper insolvencies.

3. And the plaintiff further excepts to the defendants' construction of the local law of Harford County set forth in said prayer, in which it states that said law contemplates balances of unpaid taxes extending beyond the fiscal year for which they are levied. (*Exceptions sustained.*)

*Plaintiff's Special Exception to Defendants' Fifth Prayer.* The plaintiff specially excepts to the defendants' fifth prayer, because:

1. There is no evidence legally sufficient to show that the facts set forth in said fifth prayer as to the settlement between the equitable plaintiff and the defendant, Wm. J. Shanahan, was made with any knowledge of the conditions of the affairs and accounts of the defendant, Shanahan, for the year 1914, and that there is no evidence in this case, that the equitable plaintiff had any information from any audit at the time they declined to accept the statement of said Shanahan as to the account of said Shanahan for the year 1914.

2. And the plaintiff specially excepts to said prayer because there is no evidence that the equitable plaintiffs made any arrangement that all balances of taxes except the amounts answered as insolvencies were to be held by the succeeding treasurer for collection.

3. And because said equitable plaintiffs had no legal power to make such settlement. (*Exceptions sustained.*)

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Stevenson A. Williams,* with whom were *Harry S. Carver, Elmer J. Cook* and *Fred R. Williams* on the brief, for the appellants.

*Robert H. Archer, Jr.,* and *Thomas H. Robinson,* with whom was *William P. Cole* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This is one of eight suits brought by the County Commissioners of Harford County against William J. Shanahan, a former treasurer of that county, and the United States Fidelity and Guaranty Company, the surety upon his official bond as such treasurer. By the local law of Harford County, the county treasurer is elected by the voters of the county for a term of four years. He is not, as is often the case, an appointee of the County Commissioners. He is required to give bond annually.

William J. Shanahan was first elected treasurer in 1909, and upon the expiration of his term was elected for a second term in 1913. He gave bond annually as required by the statute, and it is upon his bond for the year 1914 that this suit was brought. The case was first argued at the April Term, 1922, and later, upon a motion filed on behalf of the appellee, a reargument was granted on account of the importance of the questions involved, and it was felt best that it should be passed on by a full bench. This re-argument took place at the October Term, 1922. The case has thus been twice considered.

There were twenty-six exceptions contained in the record, but it will not be necessary to pass upon these singly, as many of them present the same identical question, having been first raised upon a question of the admissibility of evidence, and again presented by one or more of the prayers offered in the case.

Before taking up the matter in detail, it is well to have clearly in mind the law which is involved and which must necessarily be controlling of the case.

The local law of Harford County was codified by the Act of 1916, chapter 680. The most important provision involved in this case is but a repetition *totidem verbis* of the Act of 1912, chapter 128, section 262-J, which is reproduced in the Act of 1916 as section 475. That section reads as follows:

"262-J. The said treasurer shall, at the expiration of his term of office, make a full statement with the county commissioners of all county taxes placed in his hands for collection and all erroneous and insolvent tax bills for which he shall claim a credit shall be presented to said county commissioners before or at the time above specified for said final settlement, and in no case shall said county commissioners allow a credit for erroneous or insolvent tax bills, unless satisfactory proof be produced, under oath, that said bills cannot be collected; and the said treasurer is required to enforce payment of taxes by sale, as herein provided of all property upon which taxes are in arrears, as soon as he is empowered so to do, and upon his retirement from office he is directed and required to deliver to his successor all office books and papers and all balances of taxes due upon the levies for which he is charged, including all cash in his hands as treasurer, whether from taxes, the proceeds of sale of property of delinquent taxpayers or from any other source; and also to deliver to him all proceedings had for the enforcement of the payment of said taxes, and the successor of a deceased or retiring treasurer is empowered and required to collect and enforce the payment of said taxes, as herein provided; and in all cases where a treasurer has taken steps for the enforcement of the payment of said taxes, and shall retire or die before the collection of said taxes, or before said proceedings are completed, his successor is empowered and required to continue and complete said proceedings for the enforcement of the payment of said taxes, and so collect the same; and is hereby clothed with all the power and authority in law had by the retiring treasurer during his term of office for that purpose."

It will be observed that one peculiarity of the situation is, that the treasurer, who is elected for four years and who is required to give a new bond each year, is not, by the terms

of the act, required to render to the County Commissioners a "full statement" of all county taxes placed in his hands for collection until the close of his term. Therefore the present suit is upon a bond which covers only the first year of his last term as county treasurer. Some confusion may be avoided by keeping this fact clearly in mind in considering the testimony which was offered in the case, and in the next place, that the act did not contemplate that he would collect during the year the entire amount of the levy placed in his hands for any one year, for on his retirement from office he is directed and required to deliver to his successor all balances of taxes due upon the levies for which he is charged, and the successor is empowered and required to collect and enforce the payment of said taxes.

The first question presented by this appeal was raised by a demurrer to the declaration, and the ground of it seems to have been as to the form of the suit. As entitled, it was the State of Maryland to the use of the County Commissioners of Harford County, plaintiff. This form of suit has been approved in such cases as *Ing* v. *State, use of Lewis,* 8 Md. 287; *Logan* v. *State, use of Nesbitt,* 39 Md. 177; *Le Strange* v. *State, use of Roche,* 58 Md. 26, and in overruling the demurrer the trial court was entirely correct.

The plaintiff also demurred to the eighth plea of the defendants, which was in the nature of a plea of accord and satisfaction, and this demurrer was sustained by the Circuit Court for Baltimore County when the case was tried, and the same question was subsequently raised a number of times in objections to offers of evidence or to the prayers, and the trial court acted with entire consistency whenever this question was raised.

The objection to the plea, and to the offers of evidence and to the prayers which related to the question of accord and satisfaction, was originally upon the ground that if the County Commissioners of Harford County had done anything of this nature, the act was *ultra vires,* and therefore

null and void. Later on the plaintiff's counsel suggested another ground, namely, that inasmuch as a portion of the duties of the treasurer required him to collect State taxes as well as county taxes, the County Commissioners had no power to compromise or settle any suit because of its bearing upon the State taxes.

The original claim of the County Commissioners against Mr. Shanahan was of a twofold nature. First, that he had not properly accounted for and paid over the moneys collected by him as taxes; and, second, that he had been derelict in his duty by failing to collect a portion of the taxes which appeared on the levy list that had been placed in his hands at the beginning of each year of his incumbency of the treasurership of Harford County.

The plea of accord and satisfaction, apparently, and the facts which gave rise to it, was confined to the matter of the discrepancy in the cash, and in no way related to the other branch of the claim. A number of the witnesses examined were more or less expert accountants, but their evidence dealt mainly with a shortage in the cash received by Mr. Shanahan in the payment of taxes. In his testimony, Mr. Shanahan uses language which is susceptible of the construction that it covered both. As when he testified that "the commissioners said that if I would settle up this report and these figures that had been hanging fire between them and I during the month, they would consider it a final settlement."

In this condition, and for reasons which will appear in a moment, the trial court erred in sustaining the demurrer to the plea and in its subsequent rulings involving the same question. It is urged that the duties and powers of county commissioners and those occupying similar positions were limited by the terms of the act which created them, and that they could have no power unless it was clearly expressed in the legislative enactment, and there are many of the early cases which sustain this view. But, as it became apparent that in many instances great hardship resulted, there arose a

disposition to recognize such bodies as possessing certain implied powers, and this idea of implied powers has added somewhat to the confusion of the law upon the subject, and is a matter to be jealously watched because of the liability to grave abuse. This Court has been extremely reluctant to give its sanction or recognition to the doctrine of implied powers, but in a case like the present, it would have been perfectly easy, by indirection, to accomplish all that was accomplished by an accord and satisfaction. For example, if the County Commissioners and Mr. Shanahan and his bondsmen had agreed that a judgment should be entered against him in this suit for a certain amount, and a jury had been impaneled and been told to render a verdict for that sum, and the judgment entered accordingly, the result would have been the same, and the end would have been accomplished by indirection. No good reason appears why parties should be driven to concealing what they are doing in adjusting claims against one another, when the same end can be accomplished without concealment by an application of the doctrine of implied powers. Nor has the argument that the County Commissioners are without power to settle a claim for taxes, because a portion of the taxes to be collected belonged to the State and not to the county, of any controlling force. This necessarily follows from the power given to the County Commissioners, upon its being satisfied of the insolvency of a taxpayer, to strike off the list of taxpayers such individual or corporation, even though a portion of the taxes which the citizen is expected to pay would belong to the State of Maryland, and to say that in one case bodies such as the County Commissioners are fully authorized to abate the taxes payable by one individual, but not to abate those payable by another, demonstrates the fallacy of this contention. This same argument was urged in the case of *Blundon* v. *Crosier,* 93 Md. 355, when the question was one of the power of county commissioners with regard to the selection of certain roads. This Court held that the only question so raised was

one of the good faith of the county officials and there applied the doctrine of implied powers.

This brings us to the question of the duty which is owed by the county treasurer by virtue of his office.  There are many cases, both in this state and elsewhere, which prescribe with more or less clearness the duties of such an official as a county treasurer, but nowhere is it more clearly defined than in the case of *United States* v. *Thomas,* 15 Wall. 337, which opinion was written by JUSTICE BRADLEY, and in it he lays down the rule that "a collector of public moneys is a bailee and only bound to due diligence and only liable for negligence or dishonesty. * * * The measure of his accountability is to be found in the official bond." This decision is in accord with *Colerain* v. *Bell,* 9 Metc. (Mass.) 499.  In *Olean* v. *King,* 116 N. Y. 355, the collector and his bond were held liable because of the fact that he rendered no account whatever of uncollected taxes, and the case of *Supervisors* v. *Otis,* 62 N. Y. 88, follows the same rule as did JUSTICE BRADLEY in *United States* v. *Thomas, supra.*

Looking now to the measure of accountability as fixed by the bond of Mr. Shanahan, which in the last analysis must be taken as affording the measure of liability, the language of the bond is as follows:

> "Now, therefore, the condition of this obligation is such, that if the said William J. Shanahan shall well and faithfully for the term of one year beginning the first day of May, 1914, execute and perform the duties required of him by the laws of the State of Maryland, local and general, as treasurer of Harford County as aforesaid, and shall well and truly collect and legally disburse, pay over and account for all moneys that shall be legally collectible and payable or to be accounted for by him as treasurer as aforesaid, including all moneys and funds that shall come into his hands or possession from any source whatever belonging or payable to Harford County, and keep the records and vouchers thereof, and shall in all things exe-

cute the said office of treasurer of Harford County,
according to the act or acts of the General Assembly
of Maryland, local or general, applicable to said office,
for and during the term of one year from the first
day of May, 1914."

The use by Justice Bradley of the term "bailee" has given
rise to some criticism. A collector of public moneys is some-
times described as a "special bailee," while some of the cases
decline to regard him as being in the position of a bailee at
all, especially when the bond is that of a public official,
charged with the handling of public moneys.

The reading of the condition of the bond has been given
because some of the cases, notably the earlier ones, tend to
treat an official in such a position as Mr. Shanahan occupied
as an insurer of all lists or accounts given to him. The use,
in the condition of the bond, of the phrase "legally collect-
ible" has been the subject of some misapprehension. Thus
some cases regard everything as legally collectible, meaning
thereby that it would be entirely lawful to collect it; while in
other cases the construction placed upon such language is
that a particular item or items shall be collectible by process
of law. To adopt the first construction would make a collector
of taxes an insurer of bills placed in his hands, irrespective
of whether there was any property whatever within the reach
of legal process, out of which collection could be made. By
the other interpretation a much wider latitude is given to the
collector.

It is, of course, perfectly evident that a collector may be
liable for taxes which he never collects, where the failure to
collect was due to some omission or act of negligence upon
his part, and yet if the property upon which the tax is placed
has disappeared or ceased to exist, it is equally clear that the
tax, and the remedies provided by statute for its collection,
can produce nothing, and to hold him and his bond to the pay-
ment of these, would place him at once in the position of an
insurer.

The uncollected items of taxes, to recover which this suit is brought, may in general be said to be made up as follows:

Taxes levied upon personal property such as stock held in a corporation. If now before the tax bills ever reach the hands of the collector, the corporation has ceased to exist or been dissolved, the tax cannot be said to be legally collectible. In the case of chattels, they may have been entirely consumed, or have disappeared before the bills for the tax upon them ever reaches the hands of the collector, and the same is true in such cases as in the case of corporations just mentioned. It has further been held by this Court that where property is under the control and jurisdiction of the court, the tax collector has no power to seize and sell the same, or any part thereof, for taxes which may be due. *Prince George's County* v. *Clark & Berry,* 36 Md. 206; *Hebb* v. *Moore,* 66 Md. 169; *Degner* v. *Baltimore,* 74 Md. 144; *Blakistone* v. *State,* 117 Md. 237. Therefore any taxes of this nature may not be legally collectible during the period fixed by law within which the collector shall perform his duties.

There seems to have been some feeling between Mr. Shanahan and the County Commissioners, and each was following what they believed to be the custom of the office in dealing with such matters, rather than observing strictly the provisions of law. Thus the statute already quoted, section 262-J, provides that in the final settlement of accounts the treasurer shall not be allowed credit for uncollected bills unless "satisfactory proof be produced under oath that said bills cannot be collected." What was done, as testified to by Mr. Norris, one of the County Commissioners, was that the treasurer presented to the County Commissioners the list of uncollected taxes, and each member of the County Commissioners made a copy of the names of those who lived in his own district, and if he was satisfied from his investigation that the taxes were in fact uncollectible, he so reported and the allowance was made irrespective of any oath being made by him or any one else, and this evidence is confirmed by that of Mr. Shanahan when

he says: "Each commissioner would go over that list and what they knew personally they would mark off and issue insolvency for, and included in that list was a list of all items that were in court and trustees' hands and which I could not advertise."

This was manifestly not a strict compliance with the law, that when Mr. Shanahan attempted to settle his final account the County Commissioners "asked him if he was willing to take oath that these uncollected taxes were uncollectible," or, as testified to by another witness, "that he had availed himself of all the means in his power to collect the taxes," and Mr. Shanahan's reply was "No, damned if I will," or, as testified to by another witness, that he said that he would not commit perjury.

When Mr. Shanahan comes to detail the occurrence, he denies that he said that he would not perjure himself, but he inferentially admits the other remark when he says "I might have said it. I said I wouldn't make it."

Mr. Shanahan was also apparently derelict in another respect. The only return which he seems to have made was as of insolvency, but did not return any list either of defunct corporations, chattels no longer in existence, nor on property *in custodia legis*, nor does it appear that in the case of property *in custodia legis* he made application to the court under the jurisdiction of which the property was, for leave to sell, or if not granted, for an order which would give him a priority for taxes in the proceeds, the method which was clearly pointed out by JUDGE PEARCE in *Blakistone v. State, supra*. Apparently all such items were returned by him in his statement of accounts to the County Commissioners under the title of "insolvency." But while there was this technical breach of duty upon his part, it furnished no ground for the refusal of the commissioners to make him an allowance for any proper items.

As already stated, there was error in sustaining the demurrer to the defendants' eighth plea, as, by reason of its

two-fold aspect, the question raised by this was one which could only be passed upon by a jury, and that same error makes the ruling of the court with regard to the plaintiff's special exception to the defendants' fifth prayer erroneous.

Four prayers were offered by the plaintiff and six by the defendants, all of which prayers the reporter is requested to insert in the report of this case. The trial court granted all of the plaintiff's prayers and refused all of the defendants'.

The plaintiff's first prayer was very prolix; it involved two possible questions, and as phrased was likely to be construed by a jury as constituting Mr. Shanahan an insurer of the levy given him by the County Commissioners, and so was calculated to mislead the jury, and should have been refused.

The plaintiff's second prayer likewise was based on the theory that the liability of Mr. Shanahan was that of an insurer, and for that reason the prayer should have been refused. The plaintiff's third prayer takes no account either of property *in custodia legis* or of property which had ceased to exist, and was defective in this respect and should have been refused; and it should also have been refused since it embraces in the one prayer the liability which might arise on the part of Mr. Shanahan and his bondsmen both for cash collected and losses, if any, which might have resulted from a dereliction of duty, and moreover the nature of the liability both of Mr. Shanahan and his bondsmen was, under the phraseology of this prayer, treated as that of insurer of the tax levy placed in his hands.

The fourth prayer of the plaintiff, with regard to ignoring the testimony of Gillespie, was entirely correct under the evidence as given in the case, as his examination of the books had at best been so far from complete, that it had not qualified him to speak as an expert.

The first prayer of the defendants was very nearly a correct statement of the law, but it was defective in one respect. By the use of the word "unless," it was liable to the construction that the burden of proof was on the plaintiff, when in reality

it belonged to the defendants to show that he had used due diligence in his endeavor to collect all the taxes set out in the levy delivered to him, and that the failure to collect some of them was not due to any omission or lack of diligence on his part.

The second, third and fourth prayers of the defendants were properly refused. These prayers all dealt in varying phraseology with the relation of Wm. A. Wheeler, the successor of Mr. Shanahan in the office of treasurer, to the unpaid tax bills for the years when Mr. Shanahan held that position. These seem to have been based upon the assumption that, inasmuch as the statute authorized Mr. Wheeler to receive such taxes, a duty was thereby imposed upon him with regard to their collection, and that the effect of this provision was to relieve entirely Mr. Shanahan and his bond of all liability. It is perfectly manifest that, after Mr. Shanahan ceased to be the county treasurer, he had no means at his command by which to enforce the payment of taxes due for the years when he had been county treasurer which he had not collected, but this cannot be carried to the point of saying that he and his bond were relieved of all liability for the non-collection of taxes when that was the result of some dereliction upon his part.

Defendants' fifth prayer deals with matters properly arising under the plea of accord and satisfaction and yet, as expressed, this prayer was not necessarily confined to matters properly to be described under such a title. It was therefore properly refused. With regard to the defendants' sixth prayer, it is perfectly true, as stated therein, that the oath is not necessarily that of the county treasurer. What the statute requires, and all that it requires, is that the claim by which the treasurer shall be released from personal liability shall be under oath. This oath may be that of the treasurer, or of any person sufficiently cognizant of the facts to be able properly to make the oath. The refusal of this prayer, while possibly error, was not of such a serious character as to make it a reversible error.

The judgment appealed from will, for the reasons already stated, be reversed, and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new.*
> *trial, the appellees to pay the costs.*

ADKINS, J., filed the following opinion:

I concur in the conclusion of the Court in this case, but not in all the reasons assigned by the majority opinion.

In my opinion the demurrer to the second plea of the defendants was properly sustained. The treasurer of Harford County is an elective official. His relations to the County Commissioners are fixed by the statute, which defines his and their duties in reference to the collection of taxes. That statute provides precisely what allowance may be made by the commissioners on the tax lists placed in his hands for collection and on what conditions. Unless these conditions are substantially complied with, the treasurer is responsible for the collection of the entire list, except such part as he is able to prove, in a suit on his bond, could not have been collected by him by the exercise of due diligence in the performance of his duties.

He is not a guarantor, but his bond is responsible for any loss resulting to the county or State by reason of negligence or default on his part, and it is not, I think, within the power of the County Commissioners to release him or his bond from the consequences of such negligence or default.

If there was a settlement between the commissioners and the treasurer, as averred in this plea, such a settlement should be sustained, if at all, not because it was *made*, but because the allowances made were fairly within the provisions of the statute; and there is no such averment.

Nor do I agree that it can be inferred (in any sense material to this case) "that the act did not contemplate that he would collect during the year the entire amount of the levy placed in his hands for any one year" simply because he is

directed and required, on his retirement from office at the end of his term, to deliver to his successor all balances of taxes due upon the levies for which he is charged, and the successor is empowered and required to collect and enforce the payment of said taxes. I do not understand how there could be such an inference, as to taxes, the payment of which can be enforced at the time and in the manner prescribed by the statute, without nullifying the enforcement provision, which is express and positive.

The fifth prayer of appellants was properly refused, I think, without regard to the correctness of the ruling on the special exceptions to it, for reasons similar to those expressed above in support of the ruling on the demurrer to the second plea.

Nor do I agree that "the first prayer of the defendants was very nearly a correct statement of the law," and that its only defect was in failing to make clear that the burden of proof was on the defendant to show that he had used due diligence.

All the uncollected taxes for the year 1914 were barred by limitations, and there is no evidence tending to show that any of them could have been collected at the end of Shanahan's last term. For this reason, if for no other (and I think there are others), the prayer was properly refused. The obvious effect of the prayer would have been to confuse the jury by the introduction of entirely irrelevant matter.

But I agree that there was error in granting plaintiff's first, second and third prayers. There was also error in the ruling on the sixteenth bill of exception. The defendants should have been permitted to prove that some of the uncollected taxes were levied on corporations which had been dissolved before the taxes were levied, and which were at the time of the levy without any property applicable to the payment of taxes; and that certain taxes were on stock which had never paid dividends.

By reason of these errors, I concur in the conclusion of the Court.