**BLACK DIAMOND S. S. CORPORATION, Agent for the United States Shipping Board Emergency Fleet Corporation, to Use of United States, v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

District Court, D. Maryland. July 5, 1929.

No. 3828.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for plaintiff.

Washington Bowie, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge. The question here presented involves the right of the obligee on a bond with a specified penalty to recover interest from the surety.

The material facts are these: The Courtright Dimmick Company, a Delaware corporation, on July 22, 1920, entered into a charter party with the plaintiff, the Black Diamond Steamship Corporation, agent for the United States Shipping Board Emergency Fleet Corporation, whereby the steamship Chester Kiwanis was chartered to the Delaware corporation for the carriage of a cargo of coal from Philadelphia to a Norwegian port. After loading the coal, the steamship company claimed there was $11,601.20 due it for demurrage by reason of the charterer's failure to load the cargo within the lay days specified in the charter. The Courtright Dimmick Company denied this liability, whereupon it was agreed that the lien against the cargo should be released upon the Courtright Dimmick Company giving to the steamship company a bond for the amount in dispute, conditioned for the payment of any or all sums that might thereafter be found to be due for demurrage under the charter party. The bond as given, dated August 10, 1920, is as follows, it being quoted in its entirety (except for signatures and attestations) in order that all the circumstances surrounding the issue here in question may be better understood:

"Know all men by these presents that Courtright Dimmick Company, a corporation created by and existing under the laws of the State of Delaware and duly registered and authorized to do business in the State of Pennsylvania as principal and Fidelity and Deposit Company of Maryland a corporation created by and existing under the laws of the State of Maryland as Surety, hereinafter called the Obligors are held and firmly bound unto Black Diamond Steamship Corporation, Agents for the United States Shipping Board Emergency Fleet Corporation, owner of the Steamship Chester Kiwanis hereinafter called the Obligee in the sum of Eleven thousand Six hundred and One Dollars and Twenty Cents ($11,601.20) lawful money of the United States of America to be paid to the said Obligee, its certain Attorney, successors or assigns, to which payment well and truly to be made the said Obligors do bind and oblige themselves, their successors and assigns and each and every of them jointly and severally, firmly by these presents.

"In witness whereof the said Obligors have caused to be hereunto annexed their common or corporate seals duly attested this Tenth day of August in the year of our Lord

One thousand nine hundred and twenty (1920).

"Whereas the said Courtright Dimmick Company did on or about the Twenty-second day of July A. D. 1920 enter into a Charter Party with the Obligee under the terms of which the Steamship Chester Kiwanis was chartered to the said Courtright Dimmick Company for the carriage of a cargo of coal from Philadelphia, Pennsylvania to a safe port in Norway between Trondhjen and Christiana, and

. "Whereas after the loading of the said steamer it has been claimed by the Obligee that there is due for demurrage under the said Charter Party the sum of Eleven thousand six hundred and one Dollars and Twenty Cents ($11,601.20), and

"Whereas the said Courtright Dimmick Company claim that no demurrage whatever is due, and

"Whereas it has been agreed by and between the said Courtright Dimmick Company and the said Obligee that a bond shall be given by the Obligors herein to the Obligee in the sum in dispute conditioned for the payment of any and all sums that may hereafter be found to be due for demurrage under the said Charter Party

"Now the condition of this obligation is such that if the above bounden Courtright Dimmick Company, its successors or assigns or any of them shall and do well and truly pay or cause to be paid to the said Obligee, its successors and assigns any and all demurrage which may hereafter be legally determined to be due the Obligee for time consumed in loading the said Steamship Chester Kiwanis at Philadelphia, Pennsylvania for the voyage covered by the Charter Party entered into between the Obligee and the said Courtright Dimmick Company dated the Twenty-second day of July A. D. 1920 chartering the said Steamship Chester Kiwanis for the carriage of a cargo of coal from Philadelphia, Pennsylvania to a port in Norway between Trondhjen and Christiana then this obligation to be null and void, otherwise to be and to remain in full force and virtue."

In May, 1926, the government filed suit in admiralty against the Courtright Dimmick Company in the District Court for the Eastern District of Pennsylvania, for the demurrage and interest, and on June 5, 1928, that court decreed that the government recover from the respondent the "sum of $11,601.20 with interest thereon from the ninth day of August, 1920, amounting to $5,176.58, together with libellant's costs, taxed in the sum of $94.04 and amounting in all to the sum of $16,871.82 with interest thereon until paid."

On October 25, 1928, the defendant tendered into this court $12,006.29, representing the amount of the demurrage awarded to the government in the aforementioned suit, together with interest from June 5, 1928, the date of the court's decree, to the date of the tender. Defendant contends that it is not liable for any interest accruing prior to June 5, 1928, for on that date, and not before, was the amount of its liability legally determined. Defendant further denies any liability for interest subsequent to the date of the tender, which was refused, and thereupon on December 11, 1928, the government filed suit for interest from August 9, 1920, until paid. Defendant relies upon its plea of tender. The case was tried before the court without a jury.

■ The bond which determines the rights of the parties to the present controversy is a voluntary, common-law obligation; that is, it is not given pursuant to any statute or order of court. From all that appears from the pleadings and testimony, it was made and to be performed in the state of Maryland. Therefore, the question of liability for interest thereunder must be determined by the law of Maryland, if the question has been there adjudicated. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; Scotland County v. Hill, 132 U. S. 107, 10 S. Ct. 26, 33 L. Ed. 261. The condition of the bond was to pay "all demurrage which may hereafter be legally determined to be due the obligee." The charterer in the first instance denied any liability whatsoever in the form of demurrage. A dispute and negotiations thereupon followed, with the result that the bond was given in order that the vessel might be released pending a final determination of the rights of the respective parties. This is evidenced by the following preambles in the bond:

"Whereas after the loading of the said steamer it has been claimed by the Obligee that there is due for demurrage under the said Charter Party the sum of Eleven thousand six hundred and one Dollars and Twenty Cents ($11,601.20), and

"Whereas the said Courtright Dimmick Company claim that no demurrage whatever is due, and

"Whereas it has been agreed by and between the said Courtright Dimmick Company and the said Obligee that a bond shall be given by the Obligors herein to the Obligee in the sum in dispute conditioned for the

payment of any and all sums that may hereafter be found to be due for demurrage under the said Charter Party."

In short, since the parties were unable to adjust their controversy themselves no other conclusion is reasonable, from the language in the condition of the bond, than that they were forced to a judicial settlement, and that therefore, when they employed the phrase "legally determined to be due" in the condition of the bond, they had reference to court proceedings.

In Shanahan v. State, 142 Md. 616, 121 A. 636, it is held that the phrase "legally collectible" means "collectible by process of law." By the same reasoning, "legally determined" must mean "determined by process of law." The conclusion which we reach is further supported by the fact that no limitation of time is provided in the bond for payment by the principal.

It is now well settled that a surety, if answerable at all for interest beyond the amount of the penalty of the bond, can only be held for such interest as accrues from unjustly withholding payment after notice of default of the principal. United States v. U. S. Fidelity & Guaranty Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696. In the present case there was no unjust withholding of the payment after notice of default of the principal, because, until June 5, 1928, which fixed the principal's liability, there neither was nor could have been any default, and defendant has tendered interest from that date to the date of tender. Such cases as Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, are clearly distinguishable in that there the liability accrued at least as early as the commencement of the suit; the claims were all for liquidated amounts and in no instance was the amount in dispute, the controversy being merely as to which of the claimants were entitled to share in the liability under the bond. There, as the court said, page 382 of 244 U. S. (37 S. Ct. 617), "the surety company might have paid into Court at the commencement of the suit an amount equal to the penalty of the bond. It did not elect to do so; and as the aggregate liability on the claims exceeds the penalty, it was properly held for an additional amount equal to interest from the commencement of the suit." So also the case of New Amsterdam Casualty Co. v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A.) 16 F.(2d) 847, presents a question different from the present one. There, a surety, whose bond required it to make payment in 24 hours from demand, was held liable for interest from that time, even though the addition of interest caused the recovery to exceed the penalty of the bond. In the present case a legal determination of the amount due was a prerequisite to payment. Since *legal* determination is synonymous with determination by a court of law, the present surety was not compelled to make any payment until such determination had taken place. In view of our conclusion and the defendant's tender in the present case, the questions of when, if at all, plaintiff was required to give notice to the surety of the principal's default, and whether such notice as was given was sufficient, are not involved. While we have been referred to no decision, nor have we found any by the Maryland Court of Appeals or of any other court dealing with the precise situation here presented, nevertheless the result reached is believed not only to be entirely consistent with the cases above cited and others of like effect, but in fact necessarily implied by the reasoning in such decisions. The fact that, when the bond was prepared and executed, the parties did not contemplate such protracted delay before final settlement or the possibility of a judgment being rendered, because of interest, largely in excess of the stipulated penalty of the bond—nor any other related contingency, such as financial irresponsibility of the principal, the judgment debtor—should not be allowed to enlarge the definite limitations of the surety's obligation. Thus the surety is liable for interest only from the date of the decree of the Pennsylvania District Court, namely, June 5, 1928. Its tender includes the full penalty of the bond, plus interest from this date up until the date of tender, which fulfills the surety's entire obligation under the bond. Furthermore, the effect of a tender in court is both to stop interest and to entitle the surety to costs. Maryland Code Pub. Gen. Laws 1924, art. 75, §§ 24 and 25.

In view of the conclusions which the court has reached, it becomes unnecessary to discuss the further question raised by defendant as to whether or not the plaintiff was guilty of laches in not filing suit until May, 1926, and also what effect, if any, the tender may have had upon this question.

The verdict must therefore be for the defendant.